# ELECTRIC GAS-LIGHTING COMPANY *v.* BOSTON ELECTRIC COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 232. Argued March 20, 1891. — Decided April 6, 1891.

Claims 2, 4 and 5 of reissued letters patent No. 9743, granted June 7, 1881, to the Franklin Electric Gas-Lighting Company, as assignee of Jacob P. Tirrell, the inventor, for improvements in electrical apparatus for lighting street lamps, etc., (the original letters patent, No. 130,770, having been granted to said Tirrell, August 20, 1872, and the application for the reissue having been filed February 21, 1881,) are invalid, as against the defendant's apparatus, constructed under letters patent No. 281,345, granted July 17, 1883, to the Boston Electric Company, as assignee of Charles H. Crockett, the inventor, on an application filed April 11, 1883, for improvements in electric gas-lighters.

The original patent and the reissue compared, as to the specification and the claims.

The state of the art at the date of the invention described in No. 130,770, set forth.

The history of the application for the reissue, given.

The delay of 8½ years in applying for the reissue is not explained; there was no inadvertence, accident or mistake; and the sole object of the reissue was to unlawfully expand the claims.

In equity for the infringement of letters patent. Decree dismissing the bill. Complainant appealed.

*Mr. Edward P. Payson* and *Mr. Edwin H. Brown* for appellant.

*Mr. John E. Abbott* and *Mr. John L. S. Roberts* for appellee.

Mr. Justice BLATCHFORD delivered the opinion of the court.

This is a bill in equity, filed in the Circuit Court of the United States for the District of Massachusetts, on the 1st of May, 1884, by the Electric Gas-Lighting Company, a Maine

corporation, against the Boston Electric Company, a Massachusetts corporation, for the alleged infringement of claims 2, 4 and 5 of reissued letters patent No. 9743, granted June 7, 1881, to the Franklin Electric Gas-Lighting Company, as assignee of Jacob P. Tirrell, the inventor, for improvements in electrical apparatus for lighting street lamps, etc., the original letters patent, No. 130,770, having been granted to said Tirrell, August 20, 1872, and the application for the reissue having been filed February 21, 1881. The plaintiff became the owner of the reissued patent by assignment on the 6th of May, 1882. The defences set up in the answer are prior use, want of novelty and patentability, invalidity of the reissue and non-infringement. The Circuit Court dismissed the bill, (29 Fed. Rep. 455,) and the plaintiff has appealed to this court.

The alleged infringing apparatus is constructed under letters patent No. 281,345, granted July 17, 1883, to the defendant, as assignee of Charles H. Crockett, the inventor, on an application filed April 11, 1883, for improvements in electric gas-lighters.

The only difference of consequence between the original patent, No. 130,770, and the reissue, No. 9743, is in the claims, the text of the two specifications being almost substantially the same, and the drawings differing only as to scale. The specification is as follows, words in the original which are omitted in the reissue being here enclosed in brackets, and words found in the reissue and not found in the original being printed in italics; small letters, which designate parts of the drawings, being printed in italics in both of the specifications:

"Be it known, that I, Jacob P. Tirrell, *a citizen of the United States*, [of Charlestown], *residing in West Somerville*, in the county of Middlesex and State of Massachusetts, have invented certain new and useful improvements in electrical apparatus for lighting street lamps, etc., and I do hereby declare that the following is a full, clear and exact description of the same, reference being had to the accompanying plates of drawings. This invention relates to that class of electrical apparatus for lighting street lamps in which the current is successively thrown into the magnet at each burner, one after another; and

under this invention the circuit-breaker is located at the burner, and, by the direct action of the current through the magnet located at the burner, the circuit-breaker and the valve to let on or turn off the gas are both operated, and the current, after the opening or closing, as the case may be, of the valve to one burner, is completely cut off from the magnet of such burner and thrown into the magnet of [the] next burner, and so on. In the accompanying plates of drawings the present invention is illustrated. In Plates 1 and 2, Figures 1 and 2 are elevations from different sides. In Plate 3, Fig. 3 is a partial plan view and horizontal section; Figs. 4 and 5, [detail] *detailed* views.

"A in the drawings represents a gas-burner, to which B is the feed pipe, provided with two horizontal platforms, C and D, for carrying the apparatus of this invention; E [is] a U magnet horizontally located and secured on the lower platform, C, with the pipe B in and between the legs F of the magnet; G [is] the armature properly located with regard to the magnet E and secured to the lower end of an upright lever, H, turning upon a fulcrum at I of the feed pipe B; J [is] the circuit-breaker, secured [in] *to* the upper end of the lever H and projecting upwards to the plane of *the* escape of the gas from the burner; K, a post in upper platform D, and in electrical connection with the earth. At the upper end of the post K is a horizontal platinum arm, *b*, against which rests the point *a* of the circuit-breaker J when the lever H is at rest; L [is] a spiral spring applied to lever H to throw back the armature G from the magnet E; O [is] an upright arm. This arm O, at its lower end, is hung upon a fulcrum, *d*, of an insulator block, *e*, on platform C, and at its upper end it is in a position to bear against the periphery of a sector-wheel, *f*, fixed to the spindle *g* of valve in gas-pipe B; *c* [is] a bent spring applied to arm O to hold it against the sector-wheel *f*, and when escaping from the periphery thereof, to swing it on its fulcrum. The arm O at P, between its two ends, is insulated. *h* is a finger-piece projecting horizontally from lower end of arm O. This finger-piece *h*, at its outer end, lies in a position between the two pins *l* and *m*, projecting horizontally

one above the other from the block $e$.  The lower pin $l$ extends wholly through the block $e$, and similarly projects therefrom [upon] *from* its other side, being there lettered as $l^2$.  The upper pin, $m$, only enters the block; but on the opposite side of the block thereto a similar pin $m^2$, is located, also only entering the block.  Q is an arm similarly constructed, arranged and hung on the block $e$, to the arm O.  This arm Q is in a position to bear upon the periphery of a sector-wheel, $n$, fixed to the gas-valve spindle $g$, and for its finger-piece $h^2$ to lie in and between the projecting pins $l^2$ and $m^2$ of the block $e$.  The sector-wheel $n$ is back of the sector-wheel $f$.  The two sector-wheels $f$ and $n$ are of equal diameter, of an equal length of arc — that is, a half of a circle.  The two together complete the circumference.  The relative location of the sector-wheels $f$ and $n$ on the valve-spindle is such that with the arm O on the periphery of [its] *the* sector-wheel $f$ the arm Q will be off the periphery of its sector-wheel $n$, and vice versa; and the purpose of the said sector-wheels is to turn their respective arms O Q so as to bring about a bearing between their respective finger-pieces $h$ $h^2$ and the lower pins $l$ $l^2$ and also to allow the springs applied to the said arms O Q to react and bring their finger-pieces into contact with the upper pins $m m^2$.  R is a ratchet-wheel secured to gas-valve spindle back of inner sector-wheel $n$; and S a spring pawl hung to lever H and arranged from the movement of such lever to act upon the ratchet-wheel R to turn it in the direction of the arrow, Fig. 1, Plate 1.  In lieu of a ratchet-wheel, a friction-wheel and clutch may be employed, such as shown in Fig. 5.  M and N are wires leading from the electric battery employed.  The wire M is to let on and the wire N to shut off the gas at the burner A.  The current is thrown into the one or the other of said wires by means of a double switch such as is employed ordinarily in electrical gas-lighting *apparatus* [apparatuses], and, therefore, needs no particular description herein.  The wire M connects with the arm O and the wire N with the arm Q.  T is a wire connecting lower pin $l$ with magnet E; and U a wire connecting magnet with circuit-breaker J.  V and W are wires respectively connected with upper pins $m$ and $m^2$, from which

they are to lead to the next burner, and to such burner become the letting-on and turning-off wires, as the wires M and N to the burner A.

"The position of the several parts composing the mechanism hereinabove described is at all times, if at rest, substantially that shown in Fig. 1, Plate 1, and only differs therefrom in any condition of rest, in the relative position of the two arms O Q, according as the one or the other is bearing on its respective sector-wheel $f$ or $n$. By the shown positions of the two arms O and Q, the finger-piece $h$ of arm O is against the lower pin $l$, and the finger-piece $h^2$ of arm Q against the upper pin $m^2$ of block $e$. This relative contact with the pins $l$ $l^2$ $m$ $m^2$ of the finger-pieces to the two arms is always maintained, they never being both at the same time in contact with the lower pins $l$ $l^2$, or the upper pins $m$ $m^2$, but always the one with a lower pin and the other with an upper pin alternately. [With the arms O and Q in the relative positions described and shown, if now] *If, now, with the arms O and Q in the relative positions described and shown,* a current of electricity be thrown into the wire M, (which, as stated, is the letting-on wire,) it is obvious it will pass into the magnet, (the connection being through arm O, finger-piece $h$, pin $l$ and wire T,) thence to the circuit-breaker J; and then, as the circuit is complete, the armature G will be drawn towards the magnet, turning its lever II on its fulcrum, which carries the circuit-breaker J beyond the end of the platinum arm $b$, breaking thereby the circuit and emitting an electric spark. This breaking of the circuit destroys the attractive force of the magnet, and leaves the lever II to be pulled backward by the spring L, which backward movement of the lever completes the circuit by bringing the circuit-breaker into contact with the platinum arm $b$, when another attraction of the armature G occurs, again breaking the circuit, emitting a spark, and so on, as before. By this alternate forward and backward movement of the lever II, the ratchet-wheel R on gas valve-spindle is intermittently rotated, carrying with it the valve-spindle $g$ and sector-wheels $f$ $n$. If this rotation of the valve-spindle $g$ be continued sufficiently, the periphery of the sector-wheel $f$ will be

carried beyond the arm O, leaving it free for its spring to act upon it, and thus to throw its finger-piece $h$ out of contact with the lower pin $l$, and into contact with the upper pin $m$, and the periphery of the sector-wheel $n$ will be brought to bear upon the arm Q, throwing its finger-piece $h^2$ out of contact with the upper pin $m^2$, and in contact with the lower pin $l^2$.

"With the movement of the sector-wheel $f$ beyond its arm O, and of the sector-wheel $n$ on to its arm Q, as above described, results have been effected as follows: First, the gas-valve or stop-cock has been opened to its fullest extent, and as, at each stroke of the lever H, caused by the successive attraction of the armature, the circuit was broken and a spark emitted, it is obvious the gas necessarily must have been lighted; second, the current of electricity through wire M is cut off from the magnet E and thrown into the wire V leading to the magnet of the next burner, and which, as before stated, is the letting-on wire to such burner; third, a connection has been established between the magnet E and the shutting-off wire N, so that, when desired to shut off the gas from the burner A, the operator has only to make the necessary connection between battery and shutting-off wire. The connection between *the* shutting-off wire N and *the* magnet is through arm Q, its finger-piece $h^2$, pin $l^2$ and wire T. In shutting off the gas at the burner, the operation of the parts is precisely similar to the letting-on of the gas, and therefore needs no particular description; and on its completion the arm Q escapes from its sector-wheel $n$, and the arm O passes on to its sector-wheel $f$, re-establishing the connection between letting-on wire and magnet, as before. Completing the shutting-off of the gas at one burner throws the current into the wire W leading from such burner A to the next burner, which wire W to the said next burner is the shutting-off wire. In Fig. 4, the valve in gas-pipe is shown in detail, and [it] is such that in a half-turn of the spindle $g$ the gas will be let on, and, continuing the turn, shut off. The location of the circuit-breaker at the gas-burner is such that, as it breaks the circuit by escaping from the platinum arm $b$, the spark emitted will be sufficiently near to the escaping gas [as] to ignite the same, and it is desirable that the movement to let

on the gas should be so divided as to emit a sufficient number of sparks to insure the lighting of the gas. I do not claim turning on and off *the* gas by means of a step-by-step motion, as such is not my invention. Having thus described my invention [I shall state my claims] *what I claim is* as follows."

The trivial verbal changes in the specification of the reissue show that there were no defects or insufficiencies in the specification of the original patent, which required correction; and that the sole object of the reissue was to multiply and alter the claims, which were increased in number from three to six.

The claims of the original patent were as follows: "1. A circuit-breaker, located at the burner and operated automatically, substantially as described. 2. In combination with the above a lever, adapted and arranged to open and close the stop-cock or valve of the burner and carrying the circuit-breaker, substantially as herein described. 3. The arms O Q, sector-wheels $f$ $n$, pins $l$ $l^2$ $m$ $m^2$, wires M N, magnet E, lever H, carrying armature G, circuit-breaker J, and pawl S, and the ratchet-wheel R, all combined and arranged together and applied to a gas-burner for operation substantially as and for the purposes set forth."

The claims of the reissue are as follows: "1. In an apparatus for lighting gas by electricity, the combination of two wires through which currents of electricity are passed, an electro-magnet electrically connected therewith and attracting an armature which actuates mechanism, substantially as described, for automatically turning on the gas and lighting the same by an electric spark at the tip of the gas-burner, and also for turning off the gas to extinguish the light, substantially as described. 2. In an apparatus for lighting gas by electricity, the helix of an. electro-magnet connected at one end with the wire through which the current of electricity is passed, and at the other end with the circuit-breaker located at the gas-burner, so arranged that the current of electricity is passed to the circuit-breaker through said magnet, attracting an armature actuating mechanism operating automatically to turn on the gas and light the same by the effects of the primary sparks made at the tip of the burner from said magnet in the circuit.

3. The arms O Q, sector-wheel $f$ $n$, pins $l$ $l^2$ $m$ $m^2$, wires M N, magnet E, lever H, carrying armature G, circuit-breaker J and pawl S, and the ratchet-wheel, all combined and arranged together and applied to a gas-burner for operation, substantially as and for the purposes set forth. 4. In an apparatus for lighting gas by electricity, in combination with a circuit-breaker located at the gas-burner, a lever adapted and arranged to open and close the stop-cock or valve of the burner, and carrying the circuit-breaker, substantially as herein described. 5. In an apparatus for lighting gas by electricity, the combination of a wire through which a current of electricity is passed, actuating mechanism for letting on the gas, and electro-magnet electrically connected with said wire, and armature operated by said electro-magnet, mechanism actuated by said armature, breaking the circuit at the burner tip, and producing there an electric spark or sparks for lighting the gas, the whole operating automatically. 6. In an apparatus for lighting gas by electricity, the combination of two wires through which currents of electricity are passed, actuating mechanism for both letting on and turning off the gas by substantially the same means, an electro-magnet electrically connected with said wires, an armature operated by said electro-magnet, mechanism actuated by said armature for breaking the circuit at the burner tip, and producing there the spark or sparks for lighting the gas, the whole operating automatically, substantially as described."

Prior to the invention for which patent No. 130,770 was granted, many patents had been issued for electric gas-lighting apparatus, in which the electric current generated by a battery was used for turning a gas-cock and igniting the gas, and for extinguishing the gas. Such apparatus was commonly called "automatic," to distinguish it from electric gas-lighting apparatus in which the gas-cock was turned by the hand of the operator and the electric current was used only to ignite the gas.

In regard to the state of the art at the date of the invention described in No. 130,770, and as to the nature of the invention set forth in reissue No. 9743, Professor Henry Morton, an

expert for the defendant, testifies as follows: "The invention set forth in this patent is, as I understand it, a combination of instrumentalities, all of them old, both in structure and operation, to produce a certain new effect — namely, the turning on and simultaneous lighting of a number of street gas-lamps in succession by means of a single circuit passing successively through a single magnet in each lamp, said magnet operating a break-piece, which, by reason of its automatic interruptions, both produces sparks to ignite the gas and also simultaneously opens the stop-cock so as to turn on the gas, and then, in conjunction with other mechanism, shuts off the current so as to arrest further movement when the gas is fully turned on and passes on the current to the next lamp of the series. This invention further involves an arrangement by which, by the use of another circuit, the gas can be turned off successively in the several lamps by the aid of the same magnet, break-piece and the other instrumentalities which were employed to turn it on. Operating a series of street gas-lamps in succession, so as to turn the gas on and off by the use of one main conductor for such operation, and employing only one magnet for both operations in each lamp, was old, being fully set forth in patent No. 90,629, June 1, 1869, granted to Edwin E. Bean, but in this case there was no automatic interrupter for producing sparks at the lamps, but the interruptions were produced at the lighting station. In this Bean patent, however, the means employed for turning the gas on and off and shifting the circuits from lamp to lamp are substantially the same as in the patent No. 9743.

"Patent No. 101,491, dated April 5, 1870, to Morris and Reid, shows the shutting off or turning on of the gas by the direct action of electro-magnets at the several burners, and the shutting off of the current, when it has done its work in each burner to the next in the series; but in this patent there is no automatic interrupter at the burner-tip connected with either of the gas-controlling circuits, two of which are used with separate magnets — one for turning on and the other for shutting off the gas. An automatic interrupter is used in this case for producing sparks to light the gas, but this is connected.

with a third electro-magnet, which is arranged in a third main circuit.

"Again, patent No. 121,301, dated November 28, 1871, granted to J. P. Tirrell, shows a single magnet with automatic break-piece, actuating, by means of a pawl and ratchet-wheel, the apparatus for turning the gas on or off and for shifting the circuit to the next lamp of the series, as in patent No. 9743. In this case, however, the gas is ignited by a spark obtained from a helix, used as a primary induction coil, located at the burner, whose break-piece, however, is operated by the magnet which turns on the gas.

"Again, in patent No. 121,302, dated November 28, 1871, granted to J. P. Tirrell, the operations of turning on and turning off and shunting to the next lamp in series are accomplished by the use of two electro-magnets, while the ignition is effected by a separate helix, exactly as in the patent last referred to.

"It thus appears that at the date of patent No. 9743 and of its original issue, 130,770, August 20, 1872, it was old to use an electro-magnet connected at one end with a wire through which the current of electricity is passed, and at the other end with a circuit-breaker located at the gas-burner, and so arranged that said circuit-breaker, acting upon and with said magnet, operates a mechanism for turning on or off the gas and shifting the circuit to the next lamp in series, and at the same time connecting the said electro-magnet and circuit-breaker with another wire, through which a current of electricity may be passed to reverse the previous operation of turning on or off when it is desired so to do. It was also old to cause the interruption producing the spark which ignited the gas, by means of the magnet which turned the gas on."

He adds, in regard to No. 130,770, and No. 9743: "The apparatus shown for carrying out the invention consists of a single magnet provided with an armature, which armature operates a pawl, which in turn operates a ratchet-wheel, connected with which ratchet-wheel are a gas-cock, and two circuit-shifting cam-wheels, whereby the circuit changes, referred to as the novelty of the invention, are occasioned through ap-

propriate switches. The vibration of the armature is caused by the vibrating point located at the burner tip. The operation of the apparatus is that, as soon as the current of electricity is thrown through the single controlling magnet, in the operation of lighting the gas, the armature is put into vibration by reason of the automatic circuit-breaker located at the burner-tip. The first movement of the armature occasions a spark at the burner-tip, and the same electricity which does the work of operating the armature flows in its circuit. through the circuit-breaker at the burner-tip, whereby the vibrations of the armature for turning on the gas and the sparks at the burner for lighting it are simultaneously produced. It is obvious that this operation would continue indefinitely, and the gas would be turned off and on successively in the operation, were it not for the circuit-breaking cams. When the gas has been turned on to its full extent, the circuit-breaking cams come into operation, and the circuit through the magnet of the burner is interrupted, and the circuit is sent into the next lighting apparatus. The result of this is twofold. In the first place, the apparatus is automatically arrested when the gas is fully turned on; and, in the second place, the current is transmitted to the next apparatus for the purpose of igniting the same. By this ingenious contrivance, a battery sufficient to light one gas-burner only can be employed to light a great number on a single line, because it is only employed to do its work on the magnet of one gas-burner at a time. Then that magnet and its accompanying operative parts are thrown out of circuit and the current is devoted to operating the next apparatus. In order, however, that this combination should be operative for the purpose set forth, it is necessary that the vibrating armature and interrupter should be used in connection with the other agencies described in patent No. 9743, such as the pawl and ratchet-wheel, and the cam-wheels and levers for shifting the circuit at the proper time. Thus, without the pawl or ratchet-wheel or some equivalent, the vibratory movement of the break-piece or interrupter could not be utilized to turn the gas on and off when required, and without the cam-wheels, levers, etc., controlling the circuits, the turning-on-

and-off device would be useless, because it would not be under control, but would go on turning the gas on and off in rapid succession, and leave it either on or off, as chance might determine, when the current was cut off at the lighting station. In my opinion, therefore, this invention consists in a combination of agencies, all of which are necessary to render it operative.. These instrumentalities are the two conducting circuits M and N, the electro-magnet F, the vibrating interrupter H with its contact point $a$ at the burner-tip, the pawl S, the ratchet-wheel R attached to the valve or stop-cock, and also to the sector-wheels or cams $n$ and $f$, and lastly, the levers O and Q operating the shifting of circuit from M or N to the magnet F or the next lamp, as the case may be."

There is also in the record a patent, No. 18,945, granted December 22, 1857, to Samuel Gardiner, Jr., for a mode of lighting gas by electricity, in which it is said: "I do not claim to be the discoverer of the fact that illuminating-gas may be ignited by means of electricity; nor do I claim to be the first to suggest the lighting of a street of gas-lamps simultaneously by means of electricity. A method of doing this is described on page 125 of the American Year-Book of Facts, 1851, and alleged to be the invention of M. Villatte."

Before the date of patent No. 130,770, numerous patents had been granted by the United States for electric gas-lighting apparatus; and the state of the art was such that no room was left for a pioneer or foundation patent for automatic electric gas-lighting apparatus. There are two classes of such apparatus. One of them employs a step-by-step motion, in which, by successive electric impulses, the gas-cock is rotated and always in the same direction, both for turning on and for turning off the gas. In such apparatus, there are used a single electro-magnet, a ratchet-wheel and pawl, a gas-cock which rotates always in the same direction and switching mechanism. The use of such switching mechanism is automatically to divert the electric current to the next burner, and it is absolutely necessary, for without it the gas-cock would continue to rotate, turning the gas alternately on and off, and it would be impossible for the operator to stop the movement of the gas-cock at the desired

point. Apparatus of this class is adapted and intended to light a series of burners. In apparatus of the second class, there is only a single electric impulse, and a rocking-gas valve is turned in one direction to let on the gas and in the reverse direction to extinguish it. There are two electro-magnets, but no ratchet-wheel or pawl, and no gas-cock rotating always in the same direction, and no switching mechanism or equivalent therefor, because the apparatus is adapted and intended to light only one burner and not a series of burners. The alleged infringing apparatus of the defendant belongs to this second class.

The first experience of Tirrell with electric gas-lighting apparatus was in 1869, when he was employed by Bean to make a model of the apparatus for which the patent No. 90,629, of June 1, 1869, before mentioned, was granted to Bean; and in the year 1870, he assisted in constructing some electric gas-lighting burners which were applied to street lamps in Boston, near Boston Common. The following patents have been granted to Tirrell for inventions connected with automatic electric gas-lighting apparatus: Nos. 121,301 and 121,302, November 28, 1871; No. 130,770, August 20, 1872; No. 184,807, November 28, 1876; No. 206,057, July 16, 1878; and Nos. 230,589 and 230,590, July 27, 1880.

When the inventions were made for which the two patents of November 28, 1871, and the two patents of July 27, 1880, were granted, Tirrell was in the employ of George F. Pinkham, to whom, as his assignee, the four patents were granted. Pinkham afterward assigned those four patents, for New England, to the defendant. Dr. William C. Cutler, a witness for the plaintiff, testifies that in 1872 patent No. 130,770 was sold to the United States Gas-Lighting Company, which company, in 1879, was succeeded in business and in the ownership of the patent by the Franklin Electric Gas-Lighting Company, and that the latter company ceased to do business in 1881. In each of the two patents, Nos. 121,301 and 121,302, granted to Tirrell, November 28, 1871, there is a circuit-breaker located at the auxiliary burner and operated automatically. There would be no invention in locating the circuit-breaker at the main burner and operating it there automatically. It appears

from those two patents that Tirrell then recognized the state of the art to be such that invention in automatic electric gas-lighting apparatus was limited to the specific mechanism described and claimed, or to its known equivalent. No. 121,302 points out the well-founded objections to the ratchet-wheel apparatus. No. 130,770 shows a ratchet-wheel apparatus containing a single electro-magnet, and dispenses with the auxiliary burner and locates the circuit-breaker at the main burner. The specification of patent No. 184,807, granted to Tirrell, November 28, 1876, states that the invention of that patent relates more particularly to the electrical gas-lighting apparatus described in patent No. 130,770, of August 20, 1872, and consists "in certain improvements in the construction, combination and arrangement of the parts embraced in said apparatus." It is also evident, from the specification and drawings of patent No. 206,057, granted to Tirrell, July 16, 1878, that that patent is for a further improvement in the construction, connection and arrangement of the several parts of the apparatus described in patent No. 130,770.

Patent No. 230,589, granted to Pinkham, as assignee of Tirrell, July 27, 1880, is for a ratchet-wheel apparatus containing a single electro-magnet and switching mechanism, and in which the gas-cock, rotating always in one direction, is opened and closed by a step-by-step motion and by successive electric impulses; and the specification states that the invention "relates to that class of apparatus in which two separate wires are employed, one for letting on and lighting, and the other for shutting off the gas." Patent No. 230,590, granted to Pinkham, as assignee of Tirrell, July 27, 1880, is for an apparatus having two electro-magnets, which does not contain a ratchet-wheel or switch mechanism, and in which the gas-cock is opened and closed, as may be desired, by a single electric impulse. In that apparatus, sparks are produced at the burner-tip, after the gas-cock has been opened, so long as the operator keeps the electric circuit closed, and without further movement of the gas-cock. The lighting of the gas is insured by the production of a succession of sparks at the burner-tip, after the gas-cock has been fully opened. Burners

embodying the invention of patent No. 230,590 were the first ones which operated successfully in practical use; and that patent was held valid by Judge Colt, in *Boston Electric Co.* v. *Fuller*, 29 Fed. Rep. 515. All of the earlier automatic apparatuses were adapted and intended to light street lamps or a series of burners, while the apparatus of No. 230,590 was not adapted to light a series of burners, but was designed for house lighting, where it is required that each burner be capable of being lighted or extinguished independently of any other burner.

Very shortly after Tirrell made and sold to Pinkham the inventions described in patents Nos. 230,589 and 230,590, granted July 27, 1880, and the applications for which were filed May 22, 1880, and after the apparatus of No. 230,590 had been put into successful use by the defendant and by other persons who had acquired the right to use the invention from Pinkham, Tirrell was induced by the Franklin Electric Gas-Lighting Company to apply, in February, 1881, for the reissue of No. 130,770. Patents No. 121,301, 121,302, 230,589, and 230,590 were then owned by the defendant, for New England. The record does not disclose who then owned the other two Tirrell patents, Nos. 184,807 and 206,057, for improvements in the apparatus of No. 130,770. No. 184,807 was applied for January 14, 1876, nearly three years and five months after No. 130,770 had been granted; and the second paragraph of the specification of No. 184,807 says: "This invention relates more particularly to the electrical gas-lighting apparatus embraced and described in the schedule annexed to the letters patent of the United States issued to me, dated August 20, 1872, numbered 130,770; and it consists in certain improvements in the construction, combination and arrangement of the parts embraced in said apparatus, all as hereinafter fully described." Tirrell's attention was again specially called to the apparatus of patent No. 130,770, when he applied, October 18, 1877, for patent No. 206,057; yet it did not occur to him or to any one else until February, 1881, that No. 130,770 did not claim all that he had invented. Apparatus like that shown in the drawings of No. 130,770 had not operated suc-

cessfully, and had not been manufactured for several years prior to 1881. The apparatus of No. 184,807 had not been used to any extent.

Although the Franklin Electric Gas-Lighting Company obtained title to No.. 130,770 from the United States Gas-Lighting Company in 1878 or 1879, and Dr. Cutler was an officer and stockholder of both of those companies during their existence, and had been a .stockholder in the plaintiff company, yet the Franklin Electric Gas-Lighting Company, which ceased to do business in 1881, never put into use any automatic electric gas-lighting apparatus after the apparatus described in No. 230,590 had been invented. Dr. Cutler, in his testimony, on being asked to state if he knew with what purpose and intention application was caused by the Franklin Electric Gas-Lighting Company to be made for a reissue of No. 130,770, replied : " For the reason that we were told that we had no claim for the invention of the turning of the stopcock and lighting the gas by a single current with one wire, in our 1872 patent, and for no other reason." The assent of the Franklin Electric Gas-Lighting Company to the application for the reissue was signed in its behalf by Dr. Cutler as its president.

The only motive which the officers of that company had in inducing Tirrell to apply for a reissue of No. 130,770, was to expand its claims so as to cover the invention for which No. 230,590 had been granted. The file-wrapper and contents in the matter of the reissue form part of the record. In the oath to the application, Tirrell states that the patent is inoperative by reason of a defective specification, " and that such defect consists in the omission of claims for the different combinations of wires, electro-magnets, armature attracted thereby, mechanism actuated by said armature, circuit-breaker, and. other elements operating automatically as specified and claimed in the claims of this application." When the application for the reissue was first filed, it contained the following eleven . claims: " 1st. In an apparatus for lighting gas by electricity, a wire through which a current of electricity is passed, having electrical connection with an electro-magnet

attracting an armature, which armature actuates mechanism operating automatically to turn on the gas and light the same by an electric spark or sparks at the tip of the gas-burner. 2d. In an apparatus for lighting gas by electricity, a wire through which a current of electricity is passed, having electrical connections with an electro-magnet attracting an armature, which armature actuates mechanism operating automatically to turn off the gas and extinguish the light. 3d. In an apparatus for lighting gas by electricity, two wires through which currents of electricity are passed, each wire electrically connected with the same electro-magnet, attracting an armature, which armature actuates mechanism operating automatically to turn on the gas and light the same by an electric spark or sparks at the tip of the gas-burner, and also to turn off the gas and extinguish the light. 4th. In an apparatus for lighting gas by electricity, two wires through which currents of electricity are passed, which wires are electrically connected with an electro-magnet, attracting an armature, which armature actuates mechanism operating automatically to turn on the gas and light the same by an electric spark or sparks at the tip of the gas-burner, and also to turn off the gas and extinguish the light. 5th. In apparatus for lighting gas by electricity, a circuit-breaker located at the burner and operated automatically, substantially as described. 6th. In an apparatus for lighting gas by electricity, the helix of an electro-magnet connected at one end with the wire through which the current of electricity is passed, and at the other end with a circuit-breaker located at the gas-burner, so arranged that the current of electricity is passed to the circuit-breaker through said magnet, attracting an armature-actuating mechanism, operating automatically to turn on the gas and light the same by the effects of the primary sparks made at the tip of the burner from said magnet in the circuit. 7th. The arms O Q, sector-wheels $f$ $n$, pins $l$ $l^2$, $m$ $m^2$, wires $M^m$ $N^n$, magnet E, lever H, carrying armature G, circuit-breaker J, and pawl S, and the ratchet-wheel, all combined and arranged together and applied to a gas-burner for operation, substantially as and for the purposes set forth. 8th. In an apparatus

for lighting gas by electricity in combination with a circuit-breaker located at the gas-burner, a lever adapted and arranged to open and close the stop-cock or valve of the burner and carrying the circuit-breaker, substantially as herein described. 9th. In an apparatus for lighting gas by electricity, the combination of a wire, through which a current of electricity is passed, actuating mechanism for letting on the gas, an electro-magnet electrically connected with said wire, an armature operated by said electro-magnet, mechanism actuated by said armature, breaking the circuit at the burner-tip and producing there an electric spark or sparks, from the effects of the electro-magnet, for lighting gas, the whole operating automatically. 10th. In an apparatus for lighting gas by electricity, the combination of two wires through which currents of electricity are passed, actuating mechanism for both letting on and turning off the gas by substantially the same means, an electro-magnet electrically connected with said wires, an armature operated by said electro-magnet, mechanism actuated by said armature for breaking the circuit at the burner-tip and producing there the primary or electric spark or sparks for lighting the gas, mechanism actuated by said armature for turning off the gas, the whole operated automatically. 11th. In an apparatus for lighting gas by electricity, a series of electro-magnets connected with a series of gas-burners, so arranged that when a current of electricity is passed through a wire-actuating mechanism for letting on the gas of the first burner to an electro-magnet connected therewith, said magnet operates an armature-actuating mechanism operating automatically to turn on the gas of the first burner and light the same by an electric spark or sparks at the tip of the burner, and also to cut off the current of electricity from the first electro-magnet and throw the same into the wire-actuating mechanism for letting on the gas of the next burner."

In these eleven claims, claims 5, 8 and 7 are substantially the same, respectively, as claims 1, 2 and 3 of the original patent. The other eight claims consequently must have been intended to embrace some invention not covered by the three claims of the original patent; and it is apparent that the sole

purpose of the reissue was to add claims which would cover all electric gas-lighting apparatus in which one electric circuit was made use of for turning the gas-cock and igniting the gas; and it was not until after Tirrell's apparatus of 1880 had been put into public use that the discovery was made that the claims of patent No. 130,770 did not cover his invention.

Under date of March 8, 1881, the examiner rejected claims 1, 2, 3, 4, 5, 10 and 11 of the foregoing, stating that they were met by Tirrell's patent No. 121,301, of November 28, 1871. Thereupon, Tirrell erased claims 1, 2, 3, 4, 10 and 11, and inserted a new claim, which was finally allowed as claim 6 of the reissue, and also the following claim: "1. In an apparatus for lighting gas by electricity, the combination of two wires through which currents of electricity are passed, an electro-magnet or magnets electrically connected therewith, an armature or armatures attracted by said magnet or magnets, and mechanism actuated by said armature or armatures and operating automatically, whereby the gas is turned on and lighted by an electric spark or sparks at the tip of the gas-burner, and the gas also turned off and the light extinguished, substantially as described."

In their communication to the Patent Office, dated March 30, 1881, covering those amendments, his attorneys said: "A reconsideration of claim 2, formerly claim 5, is respectfully requested, as it is almost identically the same as claim 1 of the original patent. In the former patent of applicant's, cited as a reference by the examiner, the gas is first lighted at an auxiliary burner, whose flame ignites the gas at the illuminating burner. In the present application, the circuit-breaker is located directly at the illuminating burner, no auxiliary burner being used. It is believed that the claims as now presented do not conflict with the reference, and a favorable action on the case is, therefore, respectfully requested."

It is plain that no invention was required in locating the circuit-breaker at the main burner, the apparatus operating in the same way as before, and the auxiliary burner having been used only for the purpose of securing the supposed advantage set forth in patent No. 121,301.

In reply, the examiner wrote to Tirrell, under date of April 5, 1881, as follows: "This case has been again examined. There being but a single magnet and a single armature shown, applicant cannot pluralize these terms, as he has done in his amended first claim. The 1st and 7th claims inserted by amendment March 27 [30], as well as the third (original sixth) claim, are met by Edward E. Bean, 90,629, June 1, 1869 (gas-lighting). The 2d (original fifth) claim is met by Morris and Reid, 101,491, April 5, 1870 (gas-lighting)."

On April 29, 1881, Tirrell amended his application by erasing claims 1 and 2, by inserting a claim which is claim 1 in the reissue as granted, and by inserting the following claim: "2. In an apparatus for lighting gas by electricity, a circuit-breaker located at the top of the burner and operated automatically by means substantially as described."

In reply, the examiner wrote, under date of April 30, 1881: "This case has received further attention. The present second claim is substantially the same as the original 5th, and is met by Morris and Reid, 101,491, April 5, 1870 (gas-lighting)."

Thereupon Tirrell erased claim 2, by a communication in which his attorney said: "The application having been amended in conformity with the requirements of the office, and being a reissue application, an immediate allowance is respectfully requested."

By thus erasing this claim 2, which was substantially the same as claim 5 of the original application for the reissue, such erasure being made on the objection of the Patent Office, Tirrell effectually conceded that the first claim of the original patent was invalid. Furthermore, by erasing claim 1, which he had inserted by his amendment of March 30, 1881, on the objection of the Patent Office that the apparatus of the original patent showed but a single magnet and a single armature, Tirrell conceded that he was not entitled to a claim for an apparatus in which two magnets or two armatures were used; and the claims of the reissue must be held to be limited to the specific mechanism claimed in the original patent. *Sutter* v. *Robinson*, 119 U. S. 530, 541.

In the present case, the original patent was not inoperative

or invalid by reason of a defective or insufficient description of the invention, for the text of the specification of the reissue, aside from the claims, is substantially the same as that of the original.   Nor was the application for the reissue made because Tirrell in the original had claimed as his invention more than he had a right to claim as new, for his oath declares that the defect consists in the "omission of claims."   The object of the reissue was to prevent the patent from being confined to the apparatus illustrated in the drawings and described in the specification of the original, and to enable it to cover apparatus covered by patents issued subsequently to the original, and especially apparatus covered by patent No. 230,590.   The new claims of the reissue are not for the same invention set forth in the claims of the original.

It is now contended that the invention which Tirrell really made, and which he intended to secure by patent No. 130,770, was the utilizing of one electric circuit both to turn on and to light the gas; but in the description contained in the specification of the original patent, there was no statement that the invention consisted in utilizing one electric circuit to do the work of turning on and lighting the gas, which formerly had required two electric circuits, nor was there any claim for such an invention.   The statement in the second paragraph of the specification, that "under this invention the circuit-breaker is located at the burner, and by the direct action of the current, through the magnet located at the burner, the circuit-breaker and the valve to let on or turn off the gas are both operated," is equally true of the apparatus shown in patent No. 121,301, granted to Tirrell, November 28, 1871, except that in the latter patent the circuit-breaker is located at the auxiliary burner instead of at the main burner.   The invention which Tirrell really made is what he claimed in No. 130,770.   What he described in the specification of that patent and did not claim is presumed to have been old.

Moreover, the unexplained delay in applying for the reissue must be regarded as fatal to its claims.   *Miller* v. *Brass Co.*, 104 U. S. 350, 355; *Clements* v. *Odorless Apparatus Co.*, 109 U. S. 641, 649; *Mahn* v. *Harwood*, 112 U. S. 354, 363; *Wollen-*

*sak* v. *Reiher*, 115 U. S. 96, 100; *Ives* v. *Sargent*, 119 U. S. 652, 662; *Hoskin* v. *Fisher*, 125 U. S. 217.

Nor was there any inadvertence, accident or mistake such as would authorize a reissue with new claims. *Clements* v. *Odorless Apparatus Co.*, 109 U. S. 641, 649; *Mahn* v. *Harwood*, 112 U. S. 354, 359; *Coon* v. *Wilson*, 113 U. S. 268, 277; *Newton* v. *Furst & Bradley Co.*, 119 U. S. 373, 385; *Worden* v. *Searls*, 121 U. S. 14, 24; *Matthews* v. *Ironclad Mfg. Co.*, 124 U. S. 347.

Claim 1 of the original patent cannot be regarded as a proper foundation for claims 2 and 5 of the reissue, because that claim was repeated in the application for the reissue, and was abandoned by Tirrell after he had repeatedly attempted, and unsuccessfully, to convince the Patent Office that the invention set forth in that claim was not anticipated by the patents referred to by the office. Nor can it be held that claims 2 and 5 of the reissue are for inventions which the specification of the original set forth as the inventions of the patentee.

Unless the first claim of the original is to be limited to a circuit-breaker located at the burner, the fourth claim of the reissue claims a combination of a smaller number of elements than claim 2 of the original, and is therefore void.

A suit was brought by the present plaintiff, in the Circuit Court of the United States for the Southern District of New York, against Luther G. Tillotson and another, composing the firm of Tillotson & Co., for an infringement of reissue No. 9743, and was heard before Judge Wheeler, whose opinion is reported in 21 Fed. Rep. 568. The infringing apparatus was made under patent No. 230,590. The question of the validity of the reissue was considered by the court, in reference to claims 2 and 5, and it was held that those claims were invalid, on the ground that they were not made anywhere in the original patent as a part of the invention; that that patent had stood nearly nine years before those claims were made; and that the right under which the defendant operated had accrued before they were made. The same result was reached by Judge Wheeler in a suit in the same court, as to claim 5 of the reissue, against Smith and Rhodes, 23 Fed. Rep. 195. In the

present case, Judge Colt, in his opinion in 29 Fed. Rep. 455, adopted the views of Judge Wheeler as to claims 2 and 5 of the reissue, and held those claims to be void, under the authority of *Miller* v. *Brass Co.*, 104 U. S. 350, and subsequent cases. In regard to claim 4 of the reissue, which is in substance the same as claim 2 of the original, Judge Colt held that there was no infringement, because there was in the defendant's apparatus no separate lever to open and close the valve and carrying the circuit-breaker, such as is described in the Tirrell patent.

The defendant's apparatus is the Crockett burner, described in patent No. 281,345, of July 17, 1883, and resembles the apparatus of patent No. 230,590 in dispensing with the ratchet-wheel and switching mechanism, in opening and closing the gas-cock with one electric impulse, and in employing two electro-magnets and two independent electric circuits, one for turning on and igniting the gas, and the other for turning off the gas.

If the claims of the reissue are limited, as they must be, to the specific mechanism described in the specification, it is very clear that the defendant's apparatus does not infringe. It is incapable of being used to light a series of burners. It opens the gas-valve by a single impulse, and closes it by a single impulse. No spark is produced until the gas-valve is fully opened. It has no switching mechanism, or any equivalent therefor, no ratchet-wheel and pawl, and no lever carrying the circuit-breaker. It has two magnets, two armatures, and two electric circuits, the magnets having no connection with each other, one of them being used solely for turning on and lighting the gas, and the other for turning it off, and no spark being produced in the latter operation. Nor has it any lever distinct from the armature; nor is the armature which operates to close the gas-valve ever in combination with the circuit-breaker.                                    *Decree affirmed.*