STEIGER et al. v. WAITE GRASS CARPET CO.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1914.)

No. 1981.

1. PATENTS (§ 328*) — VALIDITY AND INFRINGEMENT — FEEDING DEVICE FOR GRASS TWINE MACHINE.

The Jerrems patents No. 745,625, claim 1, for a feeding device for a machine making grass twine, and No. 824,871, claim 1, for an improvement thereon, were not anticipated and are valid, but, in view of the prior

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

art, are limited to the mechanism described and shown; as so construed, *held* not infringed.

**2. PATENTS (§ 246*)—INFRINGEMENT—COMBINATION PATENT.**

In a combination patent all the elements are material, and all or their equivalents must be found in another device to constitute it an infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 387; Dec. Dig. § 246.*]

Appeal from the District Court of the United States for the Eastern District of Wisconsin; A. L. Sanborn, Judge.

Suit in equity by Emil H. Steiger and Thomas W. Jerrems against the Waite Grass Carpet Company. Decree for defendant, and complainants appeal. Affirmed.

For opinion below, see 194 Fed. 878.

James F. Williamson, of Minneapolis, Minn., for appellants.

Samuel W. Banning, of Chicago, Ill. (Thomas A. Banning, Thomas A. Banning, Jr., and Ephraim Banning, all of Chicago, Ill., of counsel), for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge. This appeal involves the alleged infringement of the feeding devices of claim 1 of patent No. 745,625, for a machine for making grass twine, granted to T. W. Jerrems December 1, 1903, and of claim 1 of patent No. 824,871, for grass feeding mechanism for twine machines, granted July 3, 1906. Said claims read as follows:

"A feeding device for a machine of the character described, comprising opposing blades or bars having co-operating serrated edges, and means for vibrating one or more of said blades or bars to produce the feeding action, substantially as described."

"In a feed device of the character described, the combination with opposing blades or bars having co-operating serrated edges, of means for vibrating one or more of the said blades to produce a feeding action, and a vibratory agitating arm arranged to act upon the grass blades in the vicinity of the point where said blades make their entrance between the said serrations of said blades or bars, substantially as described."

The District Court found against the appellants on the question of infringement, and dismissed the bill for want of equity.

"The principal feature of my invention," says the specification of the first-named patent, "resides in the grass feeding device for feeding, in an even order of succession, the long wiry grass stems to the twisting devices or to other devices which are to receive them. This grass-feeding device involves co-operating blades or bars having serrated edges—that is, teeth or similar projections which co-operate to feed the grass stems one or more at a time—one or more of the said feed bars or blades having a vibrating movement to produce the feeding action."

In the specification of the second above-named patent, the patentee says:

"In my present invention I combine with these serrated blades or bars a vibratory agitating arm or member which acts to stir and prevent clogging of

the grass blades at a point where they make their entrance between the serrations of the opposing blades" (of the first-named patent).

The later patent by reference to the former covers the former so far as here involved, and adds the vibrating agitating arm. It is shown diagrammatically in figure 1 of the drawings of the second patent, and is here reproduced:

*Fig. 1.*

The device consists of a pair of blades or bars having their edges in parallelism, close together, and having downwardly extending serrations on their several edges. Opposing these serrated bars is a single blade or bar with serrated edge, so located as to operate between the opposing parallel bars. These opposing bars have a reverse reciprocation; i. e., the single bar moves upwardly as the opposite parallel bars move down, and vice versa. The movement is sufficient to cause the teeth of one opposing bar or blade to move past the teeth of its opposite blades or bars, whereby the grass in the grasp of the rising member is pushed by the teeth of the rising arm into the teeth of the descending or stationary arm, and seized by the teeth of the descending or stationary bar or blade and carried downward. By the rapid movement of these jaws, a stream of descending wisps of grass is passed on to the advancing rolls. The trial judge describes the downward movement as a "step by step movement." Were the machine operated slowly, such must appear plainly to be the case. It is none the less so because it occurs in too rapid succession to be detected by the eye. In operation, the grass to be treated rests between the diverging upper edges of the blades and bears largely against the upper part of the serrated edges of the jaws, at which point the reciprocating blades or jaws seize mouthfuls of them, one or more, and start them downward. Thus, by zigzag movement between the jaws, the grass is finally worked down to the advancing or feed rolls. Evidently one of the opposing bars might be stationary, but this would result in a reduction of the amount of grass carried down. The patentee says:

"It will of course be understood that the machine above described is capable of a large range of modification within the scope of my invention as herein set forth and claimed."

There seems to be nothing in the patent limiting the co-operating serrated edges to any particular linear form. The appellants claim they may be either straight or curved, or otherwise, as may be desirable. Nor is the vibration limited, appellant insists, to the means

shown. All that is required is that vibration be provided. Appellants' expert defines the "vibrating" called for by the claims as "any back and forth movement of one blade or bar relatively to another or others or of all the bars back and forth relatively to each other or one another." The grass at times becomes wedged or packed in the crotch of the beveled guiding arms or hopper so that the serrated teeth of the jaws fail at times to seize the proper number of strands. In order to meet this difficulty, the device of the second patent was provided. It is the agitating arm *12* shown in the above reproduction of figure 1 of the second patent.

"This agitating arm," says the patentee, "therefore stirs up the grass blades at the bottom of the gathering crotch and prevents clogging of the grass blades at this point, and, furthermore, positively forces downward certain of the grass blades, so that they will be positively sought by the teeth of the single blade. The grass blades are thus positively started on their way downward between the serrations of the opposing blades, and will be moved downward in regular order of succession under the alternate reciprocations of the opposing blades."

The result is, as stated by appellee's expert, that "as the blades of grass drop from the lower ends of the toothed edges they are carried away in overlapping order to the other portions of the twine making machine which twist up the stranded grass," etc. The commercial form of appellants' device is considerably modified. The reciprocation of the opposing blades is abandoned. The two parallel blades are made stationary and the opposing blade is vibrated toward and away therefrom; the serrated portion of the vibrating blade is made semicircular-convex, while the serrated portions of the stationary parallel blades are made semicircular-concave. The serrated edges of the three blades are thus brought into such close proximity that they select the grass and carry it downward rapidly and with due regularity, aided by the antipacking movement of the agitating arm *12*.

It is claimed by appellee that the device of said claims is not novel; that it is found in the prior art, as represented by patent No. 430,650, granted to Howe June 24, 1890, for grass binding harvesting machines, and patent No. 701,183, granted to Ellis May 27, 1902, for a method of preparing flax fiber for spinning. Some reliance is also placed by appellee upon the disclosures of patent No. 485,146, granted to Bazerque October 25, 1892, for a machine to feed prepared tobacco-granular, straight cut or other form from a hopper to a carrier, patent No. 93,165 granted to Behel August 3, 1869, for use in connection with grain-binding harvesters, and patent No. 369,479, granted to Stephens & Carter September 6, 1887, for a machine for making straw ropes for grain-binding harvesters.

The pioneer in feeders for grass twine machines was Lowry, who secured two patents, one numbered 451,496 and the other 451,497, dated May 5, 1891, for automatic feeders for twine making machines. He employed fingers which selected small wisps of grass from the hopper and advanced them longitudinally toward the feed rolls. Counsel for appellants contends that:

"Jerrems was the first to provide any sort of device adapted to engage with the butt ends of wisps of grass while that grass remains commingled with the

supply mass thereof contained in the grass holder, to deflect the said butt ends of said grass laterally downward and into the bite of advancing rollers, while the top ends of said same wisps of grass still remain in the grass holder commingled with the mass of grass held thereby, and doing this in timed succession," etc.

This may not be conceded, save only as to Jerrems' specific method. A withdrawal by deflection sidewise is, appellee claims, shown in the Howe and Ellis patents. The selector in these patents is an oscillating notched disc, which operates through practically 90 degrees, assisted in the Howe device by a straw carrier $L$ with its sheet iron wing $l^5$, which agitates a disc $l^9$, which in turn agitates the straw in the hopper. The Howe disc has ten feed notches, and the Ellis device has but two, the latter diametrically opposite each other. These carry their wisps of straw and flax fiber respectively in one movement from the time they seize it to the point of discharge, as would also be the case if the discs rotated. In this respect they seem to resemble appellee's device. The Ellis patent makes no provision for agitating or otherwise assisting the flax into the notches of the selecting disc, that, seemingly, being accomplished by gravity.

The remaining patents above noted are not deemed of value in arriving at the true scope of the claims in suit. We find nothing in the prior art which anticipates the claims under consideration when properly limited. When thus construed, they present a new and useful means of feeding straw to the twine twisting device, and are, for the purpose of this proceeding, entitled to be upheld as valid.

Appellee's device employs the common grass holder. Its selector is a notched wheel or disc extending into the curvilinear throat between the disc and its opposing jaw, as shown in figure 4 of sheet 2 of drawings of appellee's stipulated structure, Complainants' Exhibit No. 10½, herewith shown:

Fig. 3.

Its opposing member is serrated and concave. The arms of the grass holder converge toward the point where the notched wheel or disc comes in contact with the stalks of grass in a throated passage formed in a casing numbered 19, extending downwardly. At that point the notches on the disc seize or select from the volume of grass such portions of the butt ends thereof as is desired and deflect those ends downwardly through the lower end, not shown in the drawing, to the secondary feed rolls, which in turn grasp it and draw it forward into the twisting devices. To prevent wedging or packing at the base of the grass holder, appellee provides: First, a so-called toothed oscillating packer bar 28, which has upwardly pointing large teeth; second, a smaller so-called oscillating packer plate having a slightly serrated edge. Both packer bars, as will be seen from

the drawing of figure 3 of sheet 1 of Complainants' Exhibit 10½, here reproduced in reduced form, are located and operate above the foot of the hopper or holders, and act upon the mass of grass, so as to cause it to be prepared to feed into the notches of the rotating disc. These packers are on opposite sides of the body of grass; the larger one being above and some distance from the smaller one. The teeth on the upper one, marked *28*, are wedge-shaped. This bar is constructed so as to oscillate in such manner as to cause these teeth to enter and agitate the mass as they move transversely of the line of downward movement of the grass. Their lower beveled sides rest upon the grass and bear down upon it as

Fig 4.

they enter the mass. This larger packer is supplemented by the action of the smaller oscillating bar or packer, marked *29*, the teeth of which are much smaller than those of the bar *28*, and which has a downward thrust in a circular path to prevent wedging of the grass in coming into contact with the notched edge of the disc, which extends into the feedway or throated passage. This oscillating bar *29* moves mostly transversely to the direction of movement of the grass, and thus its action differs from the up and down movement of complainants' agitator arm *12*. Its purpose, however, seems to have been the same.

Comparing the Jerrems and the alleged infringing devices, it is apparent that they are dissimilar in principle of operation, construction of details, in arrangement of details, in operation and in result. True, they are alike in that: (1) Each is designed to deal with grass twine manufacture; (2) each is designed to select from the mass of grass and feed definite quantities thereof transversely to other parts of the machine, and provides moving and other mechanism to that end; and (3) each, except the first patent, provides vibrating devices for agitating and otherwise assisting the grass into contact with the selector. Further than these, resemblances are wanting. Appellee's machine has no opposing blades with co-operating serrated edges. Nor has it the blades with serrated edges standing parallel with each other, nor is the grass, as it descends in the feed throat, seized first by the teeth of one jaw of the serrated blade and then by those of the other, but it is carried down in one movement to the point of delivery to the advancing rolls. Nor is its downward movement of a jerky, zigzag character, resembling a step by step descent as in the patent in suit, but, on the contrary, it is swung by a rotary, even, smooth, and single movement from its first seizure by the notch to the point of delivery to the forwarding rolls. Nor is there co-operation between

the notched selecting and forwarding disc and the agitating or packing arms *28* and *29*. These act entirely upon the mass of grass, keeping it in condition to be fed downwardly. Their relation to the selecting notched wheel is that of mere aggregation. The arm or packer *29* is very similar to and suggestive of the wing $l^5$ and reciprocating disc $l^9$ of the Howe patent. These, the Howe patent says, are provided "to agitate the straws $h^1$ in the hopper, so that the picker disc may always be in contact with them." It will thus be seen that appellee's device lacks many of the elements of the claims in suit. · In a combination patent, all the elements are material. Water Meter Co. v. Desper, 101 U. S. 337, 25 L. Ed. 1024.

"The language by which the comprehensive boundaries of a claim are to be made descriptive and clear lies wholly within the selection of the inventor. He alone may choose the words to describe and particularize his invention. When chosen and used, such words must be held to be binding upon him." Duff Mfg. Co. v. Forgie, 59 Fed. 773, 8 C. C. A. 261.

See, also, Electric Co. v. Boston, 139 U. S. 481, 11 Sup. Ct. 586, 35 L. Ed. 250; Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 279, 24 L. Ed. 344.

Were Jerrems in any proper sense a pioneer in the art to which the claims in suit belong, he might claim some of the features covered by appellee's device above enumerated as equivalents, though it is not clear that he could in any case claim the notched disc and the rotary movement thereof as coming within the principle of his serrated oscillating arms or jaws. In view, however, of the condition of the prior art, as disclosed in analogous arts, we are of the opinion that the Jerrems invention in suit must be construed as limited to the devices shown in his said two claims, and that, so construed, they do not cover the device of appellee, and that the latter, therefore, does not infringe the claims in suit.

The decree of the District Court is accordingly affirmed.