## CLEMENTS *v.* ODORLESS EXCAVATING APPARATUS COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF MARYLAND.

Argued December 5th, 1883.—Decided January 7th, 1884.

### *Patent.*

Claims 1 and 3 of reissued letters patent No. 6,962, granted to Lewis R. Keizer, February 29th, 1876, for an "improvement in apparatus for cleaning privies" (the original patent, No. 115,565, having been granted, June 6th, 1871, to Henry C. Bull and Joseph M. Lowenstein, on the invention of said Bull, and the application for the reissue having been filed January 11th, 1876), namely, "1. A privy-vault cleaning apparatus, consisting of an air-pump, a deodorizer, and suitable tubular connections, in combination with an independently movable receiving cask, having an induction passage or opening, and also an air-opening for connection with the air-pump, and provided with screw-necks at each opening for receiving sealing caps or covers, substantially as described, whereby the movable cask may be located in any desired position with relation to the vault and privy, and the pump and deodorizer located in any desired position with relation to the vault, privy and cask, and also whereby the casks, when filled, may be handled as is usual with filled casks, as set forth ;" " 3. The combination, with a portable night-soil cask, of a float-valve located at the air passage, substantially as described, whereby the fluid matter is prevented from entering the air-passage and clogging the suction air-pipe and pump, as set forth ;" are invalid, because they are for inventions not indicated in the original patent as inventions, being for sub-combinations in combinations claimed in the original, and were made for the purpose of covering features described in patents issued to others during the interval between the granting of the original and the application for the reissue.

Those features are contained in the defendant's apparatus, and that apparatus does not infringe any claim in the original patent.

*Mr. Hector T. Fenton* for appellant.
*Mr. Benjamin F. Price* for appellee.

Mr. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought for the infringement of reissued letters patent No. 6,962, granted to Lewis R. Keizer, February 29th, 1876, for an "improvement in apparatus for cleaning privies," the original patent, No. 115,565, having

been granted, June 6th, 1871, to Henry C. Bull and Joseph
M. Lowenstein, on the invention of said Bull, and the appli-
cation for the reissue having been filed. January 11th, 1876.
The specification says:

"My invention consists, mainly, in a sink-cleaning apparatus,
consisting of an air-pump, a deodorizer, and suitable tubular con-
nections, in combination with an independent or movable receiv-
ing cask, having an induction passage or opening, and also an air-
passage for connecting with the air-pump, and provided with
stench- and water-tight covers for both passages, whereby the
movable cask may be located in any desired position with relation
to the vault, and the air-pump and the deodorizer properly located
with reference to the vault and cask, and also whereby the cask,
when filled, may be trundled on its bilge or end, after the usual man-
ner of handling casks or barrels. My invention consists, further,
in the combination with the cask, of a flanged opening, a detach-
able suction-pump or funnel, connected with the flange of the open-
ing, and a check-valve located within the cask for retaining the
offensive matter after. passing through the valve. My invention
still further consists in the combination with the air-passage of a
night-soil cask, of a float-valve, whereby, when the cask is filled
with fluid matters, the valve will be floated and closed, thereby indi-
cating that the cask is filled, and preventing the fluid matter from
entering the conducting-pipe and passing through the air-passage
to the air-pump, which would otherwise be liable to have its valves
clogged thereby and rendered inoperative. To more particularly
describe my invention, I will refer to the accompanying drawings,
in which Fig. 1 represents, in side view, a cask embodying several
features of my invention, located within a privy. Fig. 2 repre-
sents, in side view, an air-pump connected with the cask by a flex-
ible tube or suction-hose, and provided with a deodorizer. Fig. 3
represents a privy-vault. Fig. 4 represents, on an enlarged scale
and in detail, in vertical central section, the cask shown in Fig. 1.
A vault is indicated at A. It is provided with the usual entrance
or opening, as at a. B denotes one of several casks or receptacles
which are employed in connection with an air-pump, as at C, for
removing the offensive matter from the vault. The cask B has
at one end a screw-neck, i, and the check-valve d, which opens
inwardly. Said cask also has another screw-neck, as at M, to

which is attached the suction-hose which communicates with the air-pump.   Attached to this neck is also a float-valve, as at $f$, which guards the entrance to the suction-tube or hose.   The spindle of the valve $f$ is provided, in a well-known manner, with guiding devices.   The lower portion of the float-valve is provided with cork or other light material, whereby, when the

cask is filled with fluid matter, the valve will be floated and effectually close the entrance to the suction air-pipe, preventing the latter, as well as the pump, from being clogged by said matter.   The cask is shown to be provided with shoulders $h\,h$,

whereby the hoisting-clan ps L may readily be made to engage with the cask. The induction-pipe O is secured to the proper screw-neck on the cask, and it constitutes a tubular connection with the cask, through which the offensive matter is conducted from the vault into the cask.. In operation I proceed as follows : After removing the seat or floor of the privy, uncovering the entrance to the vault, the cask B is suspended by a block and tackle over the vault, connected by the suction-pipe to the air-pump, and then lowered until the funnel-pipe connection O (which is temporarily screwed to the neck $i$ of the cask) is at its lower end immersed in the contents to be removed. The air is then exhausted from the cask by means of the pump, and deodorized by the furnace on the pump. The vacuum thus induced causes the matter to be sucked through the funnel-pipe into the cask until the float-valve is lifted and the air-passage closed. The pump is then stopped and the valve $d$ closes. The cask, being wholly free from exterior contact with filth, is then lifted, the funnel and suction-pipe removed, and the screw-caps V applied to the necks $i$ and M, after which the cask is handled like any filled cask, and rolled on its bilge or end." The reissue has 3 claims, as follows : "1. A privy-vault cleaning apparatus, consisting of an air-pump, a deodorizer, and suitable tubular connections, in combination with an independently movable receiving-cask, having an induction passage or opening, and also an air-opening for connection with the air-pump, and provided with screw-necks at each opening, for receiving sealing caps or covers, substantially as described, whereby the movable cask may be located in any desired position with relation to the vault and privy, and the pump and deodorizer located in any desired position with relation to the vault, privy, and cask, and also whereby the casks, when filled, may be handled as is usual with filled casks, as set forth. 2. The combination with a portable cask, having an induction aperture at one end, of a check-valve, a screw-neck surrounding the aperture, a funnel-shaped pipe connected with the neck, and an air-eduction passage provided with a screw-neck, substantially as described. 3. The combination, with a portable night-soil cask, of a float-valve located at the air-passage, substantially as described, whereby the fluid matter is prevented from entering the air-passage and clogging the suction air-pipe and pump, as set forth."

The specification of the original patent was in these words, the drawings attached to the original and the reissue being alike:

" Figure 1 is a view in perspective of the cask or package, showing the method of suspending and operating the same. Fig. 2 is a side elevation of the suction-pump and furnace. Fig. 3 is a plan view of the vault. Fig. 4 is a vertical transverse section of the cask or receptacle shown in Fig. 1. My invention relates to an improvement in devices for cleaning or emptying privy-vaults, whereby the night-soil therein contained may be removed and utilized, and the disagreeable odors arising therefrom prevented. It consists of the vault A, receptacles or casks B, and the suction-pump with furnace C, constructed and operated as shown and described. A, a cylindrical privy-vault, constructed of metal or other suitable water-tight material, and provided with the neck $a$ and the flange $b$, which latter is designed as an auxiliary for holding it in a vertical position, as also for strengthening the same. B represents one of several casks or receptacles, which are employed as adjuncts of the suction-pump C, for removing the fecal matter from the vault. It has located at its lower extremity the funnel O, which fits air-tight upon the neck $i$, and the valve $d$, which opens upwardly ; and at its apex the float-valve $f$ is provided, which screws upon or is otherwise caused to fit air-tight upon the neck M. The float-valve $f$ consists of the rod $e$ located vertically in the tube $g$, the said rod being guided by orifices provided in transverse bars in the upper and lower ends thereof. The lower part of the float-valve is made of cork or other light material, in order that, when the cask or receptacle becomes filled by the action of the suction-pump, it may press against the orifice of the tube and thereby prevent the contents of the vault A from overflowing or extending beyond the cask B. $h$ $h$ are shoulders rigidly attached to the cask B, and are designed for clutching with the clamps L. V represents one of a series of caps which are screwed upon the neck or necks of casks B, when filled by the action of the suction-pump. The method of operating my device is as follows : After removing the seat or floor, the receptacle B is suspended from a block and tackle over the opening, and the cask or receptacle B is then lowered into the vault until the funnel O enters the fecal matter about ten inches,

whereupon, by operating the suction-pump, the receptacle or cask becomes filled with the feces until it reaches the float-valve *f*, which presses against and closes the orifice of the tube leading to the pump. The valve *d* then falls and prevents the escape of the contents of the cask. In the mean time the air that is pumped out of the receptacle B is forced into a furnace located over the suction-pump, whereby the odor arising therefrom is destroyed. When one receptacle is thus filled, the valve *f* is removed and the cap V screwed thereon, whereupon the operation is repeated by the employment of another cask until the vault is emptied of its contents." The claims of the original patent are two in number, as follows : "1. The combination and arrangement of the funnel O, neck *i*, and valve *d*, with cask B, neck M, and float-valve *f*, substantially as shown and described. 2. The combination and arrangement of the vault A, cask B, and suction-pump C, substantially in the manner and for the purpose described."

Infringement of only claims 1 and 3 of the reissue is insisted on. It is set up as a defence, in the answer, that the reissue is not for the same invention as that described in the original patent. The apparatus used by the defendant is constructed in accordance with the description contained in two letters patent —one, No. 158,743, granted to Samuel R. Scharf, January 12th, 1875, for an, " improvement in machines for cleaning privy-vaults;" the other, No. 179,993, granted to Jerome Bradley and Samuel R. Scharf, July 18th, 1876, for a "machine for cleaning privy-vaults and like places." In that apparatus there is an independently movable cask, having two necks in its upper head, as it stands. The suction-pipe from the vault is screwed to one neck, and the air-pipe, which leads to the pump, is screwed to the other neck. There is an air-pump, by means of which a vacuum can be formed and maintained in the cask, and a deodorizer, through which the air drawn into the pump is expelled by the working of the pump. The suction-pipe and the air-pipe are both of them tubular, flexible connections. There are caps for closing the necks after the barrel is filled. There is inside of the cask no check-valve, but there is a float-valve, so arranged with reference to the opening of the air-

pipe that the fecal matter lifts the valve and closes the passage when the barrel is sufficiently full.

It is quite apparent that the defendant's apparatus did not infringe either one of the 2 claims of the original patent. Claim 1 made the valve $d$ in the bottom of the cask, opening to admit the entrance of material, and shutting when the orifice to the pump was closed by the float-valve, a necessary element in the combination covered by that claim. Without the valve $d$ the peculiarly constructed cask of the patent could not be operated. So, as to claim 2, there could be no operative combination of vault, cask, and pump unless the cask should have the valve $d$, and that valve was a part of the combination covered by claim 2. The valve $d$ is not found in the defendant's apparatus, nor is there any substitute or equivalent for it. The material is taken into the barrel through its head as it stands on its bottom, and hence there is no need of a check-valve.

There is not in the specification of the original patent any suggestion or indication of any invention other than the two combinations severally claimed in the two claims. In the reissue there are material enlargements of the scope of the invention described and claimed in the original patent, and, apparently, with a studied view to include and cover, by descriptive words and by broader claims, an apparatus like that used by the defendant. If claim 1 of the reissue be construed so as to exclude the check-valve from the combination covered by that claim, no warrant is found in the original specification for such a construction. It is apparent that the inventor contemplated the use of no other description of cask than one having such a check-valve as the original specification describes. If claim 1 of the reissue be construed so as to include only such a cask as is described, that is, one with a check-valve, there is no infringement of that claim.

Claim 3 of the reissue is for the combination of a float-valve with a cask of some kind. Whether it be a cask with a check-valve, or one without a check-valve, the claim is an expansion of the invention beyond anything indicated in the original specification as the invention. In claim 1 of the original patent four other elements are made necessary, with the cask and the

float-valve, to constitute the combination claimed. In claim 2 of the original, the cask and the pump cannot be combined, so as to practically co-operate in working, unless the float-valve is used. The original specification states that unless the float-valve is used the contents of the vault will overflow or extend beyond the cask. The specification of the reissue states that, in the absence of the float-valve, the fluid matter will enter the air-pipe, and pass through it to the air-pump, and tend to clog the air-pipe and the valves of the pump and render the latter inoperative. It is, moreover, as true of claim 3 of the reissue as it is of claim 1, that, if the cask of claim 3 be construed to be a cask without a check-valve, there is no ground in the original patent for such a construction; and that, if claim 3 includes no cask except one with a check-valve, it is not infringed.

The original specification indicates nothing but a cask having the entrance opening in its bottom, furnished with a check-valve to open and shut such entrance automatically, the cask suspended vertically over the vault and lowered into it until the funnel at the bottom is sufficiently immersed, the filling of the cask in that position, and the raising it and emptying it. The cask in the defendant's apparatus has the entrance opening in its top, has no check-valve, is not suspended over or lowered into the vault, is placed at a distance from the vault, and is connected with the vault by a flexible pipe. The patent to Scharf, No. 158,743, granted January 12th, 1875, a year before reissue No. 6,962 was applied for, shows an apparatus substantially the same as that used by the defendant. There is a barrel or tank, in the head of which, as it stands on its bottom, there are two short metallic pipes. A flexible pipe extends from one into the vault, and another flexible pipe extends from the other to an air-pump. There is a deodorizer connected with the air-pump by a third flexible pipe. The cask is filled by the action of the air-pump in creating a vacuum in it  The foul air passes through the cask and the pump into the deodorizer. The barrel and the air-pump are described as "independently movable about the vault," by reason of the flexibility of the pipes. The attempted expansion of the original Bull patent, to

cover what is shown in the Scharf patent, is manifest. The funnel O of the original patent is called, in the reissue, "an induction passage or opening." It is said, in the reissue, that "the movable cask may be located in any desired position with relation to the vault;" and that the operation may be performed "within or near the privy." In claim 1 of the reissue it is stated that "the movable cask may be located in any desired position with relation to the vault and privy." The effort was to obtain a reissue which should cover an apparatus having the cask located at a distance from the vault, with a flexible pipe from it to the vault, and a receiving opening in the top of the cask, and no check-valve—all of them features not indicated in the original patent, but all of them features existing in the Scharf patent granted after the original Bull patent and before the application for its reissue. The same observations apply to the patent to Frazier, No. 168,473, granted October 5th, 1875, more than three months before reissue No. 6,962 was applied for. That patent shows a portable receiving cask connected from its top, by a flexible pipe, with the vault, and by another flexible pipe with an air-pump, which has secured to it a deodorizing vessel. The air is exhausted from the cask and passes through the air-pump into the deodorizer, and the contents of the vault rise into the cask. The cask has no check-valve, and is described as placed suitably near the vault.

The foregoing state of facts brings this case within the principles laid down in *Miller* v. *Brass Co.*, 104 U. S. 350; and *James* v. *Campbell*, 104 U. S. 356. The suggested mistake in the original patent, that its two claims were not as broad as they might have been made, and that the combinations claimed were too narrow and contained too many elements, and that sub-combinations such as are found in claims 1 and 3 of the reissue might have been claimed in the original patent, in view of the state of the art and of the description and drawings of that patent, was, if a mistake at all, one apparent on the first inspection of that patent. The expansions in claims 1 and 3 of the reissue were after-thoughts, developed by the subsequent course of improvement in the Scharf and Frazier patents, and intended to cover matters appearing in those patents and not

claimed in the original patent, No. 115,565. No excuse is given for the delay in applying for the reissue, nor is any actual inadvertence, accident, or mistake shown. The omission to claim sub-combinations in the combinations claimed, the exist- ence of such sub-combinations being apparent on the face of the original patent, was, in law, on the facts in this case, such a dedication of them, if new, to the public, that a reissue, to cover such sub-combinations, in revocation of such dedication, cannot be availed of to the prejudice of rights acquired by the public to what is shown in the Scharf and Frazier patents, issued before the reissue was applied for. The reissued patent must, for these reasons, be held to be invalid, as to claims 1 and 3.

The circuit court made an interlocutory decree declaring the validity of the reissue and its infringement and awarding a perpetual injunction and an account of profits and damages. By a final decree, a sum of money was awarded as damages. From that decree the defendant has appealed. The result of our consideration is, that

*The decree must be reversed, and the case be remanded to the circuit court, with direction to dismiss the bill.*