## PIERCE v. BELL.

### (District Court, S. D. New York. January 18, 1917.)

### No. 27.

1. PATENTS ⬩328—VALIDITY AND INFRINGEMENT—SEWING MACHINE ATTACH-MENTS.

 The Pierce patent, No. 1,154,337, for a picot cutting attachment for sewing machines, was the invention of the patentee and is valid; also, *held* infringed.

2. PATENTS ⬩328—VALIDITY OF REISSUE—SEWING MACHINE ATTACHMENT.

 The Bell reissue patent, No. 14,194 (original No. 1,111,432), for a sewing machine attachment, in the claims added goes far beyond the invention claimed in the original patent and is invalid.

3. PATENTS ⬩136—REISSUES—GROUNDS.

 The general purpose of the statute providing for reissues is to correct mistakes and errors, not to enable the inventor to extend his monopoly so as to cover progress by others in the art.

 [Ed. Note.—For other cases, see Patents, Cent. Dig. § 198½.]

4. PATENTS ⬩147—REISSUES—VALIDITY.

 The introduction in a reissue patent of claims for invention which are described, but which the patentee neither claimed nor intended to claim by the original patent, is unauthorized and void.

 [Ed. Note.—For other cases, see Patents, Cent. Dig. § 220.]

In Equity. Suit by William L. Pierce against William J. Bell, and cross-bill. On final hearing. Decree for complainant.

Samuel E. Darby, of New York City, for plaintiff.
Thomas A. Hill, of New York City, for defendant.

MANTON, District Judge. Plaintiff, owner and inventor of letters patent No. 1,154,337 issued on September 21, 1915, brings this action for infringement. Defendant, owner of patent No. 1,111,432 granted September 22, 1914, answers and files a cross-bill alleging infringement by the plaintiff on a reissue of defendant's original patent which is numbered 14,194 and was granted September 26, 1916.

[1] The invention relates to an attachment for a sewing machine and is described as a picot cutting attachment. It is used in connection with sewing machines for making hemstitching. The defendant's invention is a similar device which it is alleged contains all the features of the plaintiff's patent in suit. The defendant contends, first, that he and not the plaintiff is the inventor of the lifting attachment of the patent in suit; second, that the plaintiff obtained the idea of the patent in suit while in his employ and constructed the invention by using his tools and material, and that he stole the idea from the defendant because he knew that defendant had constructed a working model of the device and had seen the same before plaintiff applied for his patent; and, third, that the attachments which are alleged to infringe are the subject-matter of the reissued patent No. 14,194 dated September 26, 1916, which is a reissue of the original patent No. 1,111,-432 granted to him September 22, 1914, and that the plaintiff infringes the said reissued patent.

I am not impressed with the testimony that tends to support the claim of the defendant as to the first and second defenses, and, from the evidence in suit, I am of the opinion that plaintiff invented the lifting attachment of the patent in suit. Nor do I think that the plaintiff constructed the invention by using the defendant's tools and material, or that he stole the idea from the defendant because he knew that the defendant had constructed a working model of the device and had seen the same before the plaintiff applied for his patent. As to plaintiff's patent No. 1,154,337, he says in his specifications:

"This invention relates to attachments for sewing machines and particularly to devices of this class known as picot cutting attachments used in connection with sewing machines designed for making hem stitching and employing two needles which have the usual vertical and lateral movement. The object of my invention," says the patentee, "is to provide an improved attachment of this class which is simple in construction and automatic and efficient in operation."

Claims 1 and 4, which are said to be infringed, read as follows:

"1. The combination with the presser foot bar of a hemstitch sewing machine of the usual rock shaft and presser foot bracket attachment having two presser feet, the lower end of said bar being also provided with a vertical slot, and two blades pivoted in said slot and operating between said feet, one of said blades being in operative connection with the rock shaft and the other being provided with a tensional connection rearwardly of the presser foot bar, and means for throwing the last blade in a raised position."

"4. The combination with the presser foot bar of a hemstitch sewing machine having the usual rock shaft and two presser feet, of two blades pivotally supported and operating between said feet, one of said blades being in operative connection with the rock shaft and the other being provided with a tensional connection rearwardly of the presser foot bar, and means for raising the front end of the last-named blade and holding the bottom edge above the bottom surface of the presser foot."

In the specification of his patent, plaintiff points out its construction as follows:

"In the drawing forming part of this specification, I have shown at $a$ the presser foot bar of a hemstitch sewing machine, and at $b$ the rock shaft, and I have also shown at $c$ the throat plate of the machine and, at $d$ a workpiece placed thereon. I have also shown at $e$, the usual presser foot bracket which is connected with the bar $a$ in the usual manner, and which is composed of two similar side pieces $e^2$ with the lower ends of which are connected oppositely arranged presser feet $e^3$, and the presser feet $e^3$ are pivoted to the side members $e^2$ of the bracket $e$ in the usual manner, but as all these parts are of the usual construction and form no part of my invention this pivotal attachment is not shown.

"In the practice of my invention, I form in the lower end of the presser foot bar $a$ a vertical slot $a^2$ and pivoted therein, as shown at $a^3$, are blade members $f$ and $g$.

"The bracket $e$ is provided with a backwardly directed arm $e^4$ through which the bar $a$ passes and the blades $f$ and $g$ are provided with upwardly directed lugs or projections $h$ which limit the movements of said blades, and the arm $e^4$ of the bracket $e$ forms stops in connection with which said lugs or projections operate.

"The blade $g$ extends backwardly beyond the blade $f$ as shown at $g^2$, and connected therewith is a crank rod $i$, and secured to the rock shaft $b$ as shown at $j$ is a yoke $j^2$ having a short arm $j^3$ with which the rod $i$ is connected, as shown at $i^2$, and a spiral spring $j^4$ is connected with the rear end of the blade $f$ and with the rod $i$ at a predetermined point above the connection of said rod with the rear end $g^2$ of the blade $g$.

"The blade *f* is provided at its front end with a forwardly directed nose piece *f2* having a downwardly and forwardly tapered top cutting edge *f3* at the rear end of which is a vertical shoulder *f4*, and the blade *g* is provided with a forwardly directed nose piece *g3* having a bottom cutting edge *g4* which is tapered forwardly and upwardly.

"In the top edge of the rear end of the arm *f* is a notch or recess *f5*, and pivoted to a part *e5* of the bracket *e* as shown at *e6* is an arm *k*, the lower end of which is provided with a notch or recess *k2* and the upper end of said arm is provided at one side edge thereof with an extension *k3* with which is connected a spiral spring *k4* which is also connected with the bracket *e* at *k5*, and the object of the arm *k* is to lock the blade *f* in inoperative position when it is desired to make hemstitching and not desired to cut said hemstitching to form picot edges, and in order to do this the arm *k* is thrown into the position shown in dotted lines in Fig. 4, in which position the rear end of said blade is forced downwardly and the nose piece *f2* raised above the workpiece or fabric in which the hemstitching is being formed, and in this position of the parts the cutting attachment is not in use or in operation."

[2] The Pierce invention is the provision of a combination of elements in a picot attachment for sewing machines which permits the raising out of cutting position the knives of the attachment so that the sewing machine may be employed for other purposes besides cutting picot edging. With this invention, it is unnecessary to remove the attachment from the hemstitching machine as was necessary in the prior devices. Bell's original patent, No. 1,111,432, states its object to be:

"The primary object of this invention is to provide a cutting or trimming attachment for sewing machines which is especially adapted for use in connection with a two needle machine and which is of extremely practical and efficient construction.

"Another object of the invention is to provide a trimming attachment including a reciprocating rod movable through a hollow presser bar and provided upon its lower end with a knife which co-operates with a cutter plate to cut such work as may be desired."

He states the construction of his invention as follows:

"1. In combination with a sewing machine having a hollow presser bar, a rod slidable through said bar, means for reciprocating said rod, a knife secured to one end of the rod, and a slotted cutter plate for co-operation with the knife.

"2. In combination with a sewing machine having a hollow presser bar, a rod slidable through said presser bar, means for reciprocating the rod, the lower end of the rod being bifurcated, a knife, means for adjustably securing the knife to the bifurcated end of said rod, and a slotted cutter plate for co-operation with the knife."

It will be seen that his invention, as claimed, consists of the following elements: (a) A hollow presser bar; (b) a rod slidable through said bar; (c) a knife secured to one end of the rod; (d) means for reciprocating said rod; and (e) a slotted cutter plate for co-operation with the knife.

Referring to his slidable bar, Bell states:

"In carrying out my invention, I provide a rod *9*, which extends through the hollow presser box *8*, and which projects some distance beyond each end thereof. The lower end of the bar *9* is bifurcated to form the opposed ears *10* between which a knife *11* is secured by means of a screw *12*."

Referring to the knife secured to the bar, he states:

"The screw extends through alined openings formed in the ears and the knife and when tightened holds the knife rigidly against movement relative to the rod 9. By loosening the screw 12 in the alined openings formed in the ears 10, the knife 11 may be adjusted to conform to the thickness of the material being cut. Referring to Fig. 2 it will be seen that this knife extends rearwardly from the bar 9, converges toward its rear extremity, and had its cutting edge inclined rearwardly and downwardly. The extremity 12 of the knife is extended downwardly to form a sort of bill or hook."

Referring to the element as stated in his claim as "a slotted cutter plate," Bell describes this feature of his invention as follows:

"This knife co-operated with a cutter plate 13, mounted upon the needle plate 14, and provided with a longitudinal slot 15 through which the knife passes."

Bell then describes the operation of his device as follows:

"From the foregoing description the construction of my trimming attachment for sewing machines will be clearly understood, and its operation may be briefly described as follows: Supposing the machine to be used for forming picot edging; the needles 4 co-operating with the remainder of the stitching mechanism, will form two parallel rows of stitching connected by cross-stitches, and as the work is fed rearwardly under the presser foot 6, the knife 11 will raise and lower and sever the cross stitches, which pass over the slot 15 formed in the cutter plate 13. It will, of course, be understood that my attachment may be used for other purposes than that of trimming picot edging."

From this Bell's invention consisted in providing a hollow presser bar through which operated a rod provided at its lower end with a knife which co-operated with a slotted cutter plate mounted on the needle plate of the machine for the purpose of cutting between the stitches of the picot edging.

Next considering the defendant's contention that the attachments which are alleged to infringe are the subject-matter of a reissued patent granted to him on his original patent and that the plaintiff infringes this reissued patent, we find that, three days after this action was started, the application for the reissue of this patent was filed in the Patent Office.

Can it be said that Pierce's invention was an infringement of Bell's original patent No. 1,111,432? From a description as given herein of each patent and a statement of its construction, it cannot be said to be an infringement, except it may be found that the reissue of the patent as herein stated was legal and properly allowed. Referring to the reissued patent, it will be found that the only change made therein was two more claims; the specifications remain the same as contained in the original patent. The two claims are as follows:

"3. The combination with the presser foot bar of a hemstitch sewing machine, of the usual rock shaft, and presser foot bracket attachment having a presser foot, cutting mechanism comprising a member operatively connected to said rock shaft, another cutting member in cutting relation with said first mentioned member, and both of said members in the line of feed beyond said presser foot.

"4. The combination with the presser foot bar of a hemstitch sewing machine, of the usual rock shaft, and presser foot bracket attachment having a presser foot, cutting mechanism comprising two members, one of said mem-

bers operatively connected to said rock shaft, and both of said cutting members in the line of feed beyond said presser foot."

These claims as contained in the reissued patent are much broader than the original claims. Analyzing the claims, it will be seen that they are composed of the combination with a presser foot bar of a hemstitch sewing machine, (1) the usual rock shaft and presser foot bracket attachment, having a presser foot, and (2) the cutting mechanism comprising a member operatively connected to said rock shaft, another member in cutting relation with the first mentioned member, and both of said members in the line of feed beyond the presser foot.

In this, Bell has gone far beyond the claims of the original patent where he limited himself to a hollow presser bar, a rod slidable through said bar, a knife secured to one end of the rod, and a slotted cutter plate for co-operation with the knife. Instead, here he claims a "presser foot bar of a hemstitching sewing machine," "the usual rock shaft cutting mechanism operatively connected with the rock shaft," and "another member in cutting relation with the first mentioned member."

Provision is made in section 4916 of the Revised Statutes (Comp. St. 1913, § 9461) for the reissuing of a patent, where it is said:

"Whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a new patent for the same invention, and in accordance with the corrected specification, to be issued to the patentee, or, in * * * case of his death or of an assignment of the whole or any undivided part of the original patent, then to his executors, administrators, or assigns, for the unexpired part of the term of the original patent. * * * Every patent so reissued, together with the corrected specification, shall have the same effect and operation in law, on the trial of all actions for causes thereafter arising, as if the same had been originally filed in such corrected form; but no new matter shall be introduced into the specification, nor in case of a machine patent shall the model or drawings be amended, except each by the other; but when there is neither model nor drawing, amendments may be made upon proof satisfactory to the Commissioner that such new matter or amendment was a part of the original invention, and was omitted from the specification by inadvertence, accident, or mistake, as aforesaid."

[3] The object of this statute is to protect and secure for the inventor adequate protection which through some inadvertence, accident, or mistake he has not secured, but this must occur without any fraudulent intention. The invention cannot cover another invention than that of the original, nor can it cover what was described and claimed after long delay. The general purpose of the statute providing for reissue was to correct mistakes and errors, not to enable the inventor from time to time to extend his monopoly so as to cover progress by others in his art. Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783; Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658; Crown Co. v. Aluminum Co., 108 Fed. 845, 48 C. C. A. 72.

Bell had notice of plaintiff's device, for the suit was started when he applied for the reissue. He apparently did not discover any mistake or error in his patent, but at that time and prior to this suit there

was evidence which shows that plaintiff's article was on the market. Indeed, his reason at the trial for applying for a reissue of the patent is not convincing, and I am inclined to the belief that the reissued patent was applied for solely for the purpose of including the plaintiff's patent within its scope and thereby avoid a charge of infringement. Newton v. Furst, 119 U. S. 373, 7 Sup. Ct. 369, 30 L. Ed. .442; Electric Gas Co. v. Boston Electric Co., 139 U. S. 491, 11 Sup. Ct. 586, 35 L. Ed. 250; Matthews v. Ironclad Mfg. Co., 124 U. S. 347, 8 Sup. Ct. 639, 31 L. Ed. 477.

[4] Indeed, no inadvertence, accident, or mistake is shown, and this reissued patent is therefore invalid. Worden v. Searls, 121 U. S. 14, 7 Sup. Ct. 814, 30 L. Ed. 853. The introduction in a reissued patent of claims for invention which are described but which the patentee neither claimed nor intended to claim by the original patent is unauthorized and void. Ide v. Trorlicht, etc., Co., 115 Fed. 137, 53 C. C. A. 341; Clements v. Odorless Apparatus Co., 109 U. S. 641, 3 Sup. Ct. 525, 27 L. Ed. 1060. There is another rule of law that is an obstacle to the defendant's claim. The doctrine of laches may well defeat the defendant even though it may be said that his reissued patent is legal. Coon v. Wilson, 113 U. S. 268, 5 Sup. Ct. 537, 28 L. Ed. 963; Ives v. Sargent, 119 U. S. 653, 7 Sup. Ct. 436, 30 L. Ed. 544.

We find from his original patent that the defendant has two claims limited to the structure as described in the specifications and pointed out in the drawings. The reissued patent must be assumed to have been applied for and obtained because the patentee believed the claims of his original patent, when failing to construe any connection with other parts of the specification, could not be made to include the plaintiff's structure. Claim 3 of the reissued patent says:

"The combination with a presser foot bar of a hemstitching sewing machine of the usual rock shaft and presser foot bracket attachment having a presser foot. Cutting mechanism comprising a member operatively connected to said rock shaft."

The Pierce device has a cutting mechanism having a member operatively connected with the rock shaft. The reissued patent further states:

"Another cutting member in cutting relation with said first mentioned member."

The plaintiff has another member in cutting relation with the other cutting member and the claim further says "and both of said members in the line of feed beyond said presser foot."

By reference to the Abercrombie patent of the prior art, there appear all the elements of the reissued claims 3 and 4 of Bell. The distinction between Bell's and the Abercrombie is the fact that the cutting members of the Abercrombie are between the presser foot, while in the Bell the cutting member as described in his patent and shown in his drawing are beyond the presser foot. Pierce's structure follows Abercrombie and has his cutting mechanism between the presser foot.

This element contained in the reissued claims seems to defeat Bell in his attempt to expand his claims in order to bring Pierce's device within the scope of his patent. In other respects, the claims of Bell are covered by Pierce's structure. Pierce's invention consists in the provision of engaging elements in the picot cutting attachment for sewing machines which permits the raising out of cutting position the knives of the attachment so that the sewing machine may be employed for other purposes besides cutting picot edging. Bell's patent contemplated the use of one knife and a slotted cutter.

Pierce entered the service of Bell under a contract by which he was to sell the defendant's original invention outside of the territory of New York, under commissions stated in the contract. This would not forbid his making and having patented an invention as claimed by the plaintiff. He left the city June 1, 1914, for Philadelphia, and remained until June 28th, or a day or two after, and was gone until July 28th. Bell's shop was closed during July and August. It further appears that Pierce made his first model at the Pansy Waist Company about September 1, 1914, and later worked in the shop of Max Grundfast.

. I am not impressed therefore with the claim that the plaintiff used the tools of the defendant in working on his invention. The testimony opposed to this given by the defendant's witnesses is not satisfactory. I do not think that Pierce knew or saw the defendant working on or experimenting on the cutting off attachment. Indeed, Bell. said on the trial that the plaintiff never saw him working or experimenting on the model referred to; he claims that the plaintiff saw the device laying around in the shop in his tool box, and that was how the plaintiff "conceived the idea."

I am of opinion that the sale of defendant's attachment is an infringement of plaintiff's patent, and that the reissued patent is illegal and void; and I will, accordingly, grant a decree of infringement to the plaintiff against the defendant and dismiss the cross-bill filed by the defendant.