## STERN et al. v. SCHROEDER et al.

Court of Customs and Patent Appeals.
December 19, 1929.

Patent Appeal No. 2161.

See also 36 F.(2d) 515.

Hans v. Briesen, of New York City (Fred A. Klein, of New York City, of counsel), for appellants.

Kenneth S. Neal, of New York City, for appellees.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge. This is an interference case relating to a machine for making box blanks from corrugated board, the blanks being afterwards folded and used for packing and shipping goods and merchandise.

Priority was awarded to Schroeder et al. on a single count of interference, on the basis of a reissue application which appears to have been filed September 10, 1925, serial No. 55,634. This was an application for a reissue of their patent No. 1,493,404, bearing date of May 6, 1924, granted upon their application filed January 4, 1923.

The application of appellants was filed on November 27, 1923, and was pending at the time of the reissue application of appellees.

The decision of the Examiner of Interferences awarding priority to appellees was rendered December 22, 1926; appeal was taken to the Board of Appeals which affirmed the decision of the Examiners, November 1, 1927; and the case was then appealed to the court and so comes before us.

It appears that at one time during the pendency of the case in the Patent Office, a third application, that of Samuel M. Langston, was involved in the interference proceedings, and parts of the record refer to it, but the Langston issue has been eliminated, so far as this court is concerned, and the only controversy before us is that of Stern and Huether v. Schroeder and Wagner.

The count in issue is as follows: "In a paper machine, the combination of a pair of co-operating disks for slotting a blank, a scoring wheel for scoring said blank and means whereby said slotting disks and scoring wheel are connected to move in unison in axial directions."

This count originated in an application filed by appellants on November 27, 1923, which application was placed in interference with an original application of Schroeder and Wagner filed August 18, 1924. Later this particular interference was terminated and

another declared with the reissue application of Schroeder and Wagner above referred to.

The matter with which we are concerned is that of priority. To determine this, it is necessary that we should first find whether the structure of Schroeder and Wagner is so similar to that of Stern and Huether as to read upon the count, and whether the Schroeder and Wagner patent upon which their reissue application was filed is sufficient to disclose the subject-matter of the count.

This technical issue seems to involve two questions:

First, whether a certain ring referred to as a "floating ring," numbered 56 in the Schroeder and Wagner drawings, is the equivalent of the scoring wheel called for in the count.

Second, whether the reissue application discloses as a separate and distinct element "means whereby said slotting disks and scoring wheel are connected to move in axial directions."

The law examiner in the Patent Office passed upon these questions favorably to appellees, the Examiner of Interferences held likewise, and the Board of Appeals affirms these prior decisions. So, three tribunals of the Patent Office have concurred upon the general issue of technique.

The decision of the Board of Appeals says: "In the Schroeder and Wagner construction the scoring member 56 is located in the groove in the female slotting disk and is urged upward into scoring position by the spring pressed cradle by which it is supported. The reason why the scoring member of Schroeder and Wagner is in ring form is that it is located in the peripheral groove of the lower slotting disk instead of on a separate shaft. It must be capable of floating movement to permit it to function as a scoring member while allowing co-operation of the slotting disks to slot the blank. In performing the scoring operation the member 56 functions as a wheel in that it rolls in contact with the upper co-operating slotting and scoring member. We agree with the holding of the law examiner that in a broad sense the scoring member 56 of the Schroeder and Wagner reissue application may be regarded as a wheel. The scoring member 56 of Schroeder and Wagner is mounted in the peripheral groove of the lower slotting member and as stated near the bottom of page 7 of the reissue specification moves along with the lower slotting member. It seems to us that Schroeder and Wagner just as clearly disclose the 'means' of the count as do Stern and Huether in whose application the axial movement of the scoring wheel in unison with the slotting disks is secured by engagement of the periphery of the scoring wheel with the groove in one of the slotting disks. Our conclusion is that the interference count is properly supported by the Schroeder and Wagner reissue application."

The law examiner in his decision says:

"The count originated with Stern and Huether, as their claim 2. In their disclosure the scoring wheel 35, Fig. 2, extends into groove 18a of a slotting disk 17, and is a separate element from the slotting disks 17, 17a.

"In the reissue application of Schroeder and Wagner, the scoring 'wheel' must be the floating ring 56, which, as shown in Fig. 3, is movable relative to wheel 33, being of larger diameter, and is depressed at times by blades 42 and 43 from the normal position in Figs. 5 and 7 to the position in Fig. 6 without interfering with the rotation of wheel 33. The wheels 32 and 33 may be adjusted longitudinally of the shafts 30 and 56, and the holder for ring 56 moves or shifts along with wheel 32 so that the floating ring is always in the same plane with the slotting knife segments 42 and 43.

"The ring 56 may be considered a wheel in the broader sense. A wheel does not have to have a hub and spokes, and a disc wheel is practically an annulus or ring with a central opening for an axle or shaft. Incidentally, it may be noted that the patentee called member 33 a wheel or ring. If ring 56 may be described as a wheel it is a scoring ring or wheel and no new matter is introduced into the reissue application by giving the ring another name. Ring 56 is a separate element from the slotting disks of Schroeder and Wagner and may be properly included as a distinct element in the count. Even if the scoring ring or wheel plays a substantial part in the slotting it may be recited as a separate element (Ex parte Duncan, Prichard and Macauley, 1906 C. D. 348; Ex parte Hammond, 1924 C. D. 43). The ring 56 moves along shaft 26 with disk 33 and hence with disk 32 when a slotting knife 42 or 43 is left in the groove of disk 33, so that the patent to Schroeder et al., No. 1,493,404, and the reissue application provide means whereby the slotting disks and scoring wheel are connected to move in unison axially."

From our examination of the specifications, drawings, and claims, aided by an inspection of numerous exhibits on file, it does not appear to us that these holdings of the Patent Office tribunals are erroneous, and we concur in their conclusion that the respective structures read upon the count in issue both

as to the floating ring or wheel and as to the "means whereby the slotting disks and scoring wheels are connected to move in axial directions."

The member 56 of Schroeder and Wagner and the member 35 of Stern and Huether are so nearly similar, it seems to us, as to justify the holding, and certainly the means for movement in axial directions are quite as clearly disclosed by appellees as by appellants.

Appellants argue, however, that inasmuch as the Schroeder and Wagner application is for a reissue, this case falls within the doctrine laid down in Manly v. Williams, 37 App. D. C. 194, 201; Hauss v. Merrell, 48 App. D. C. 433; and Macfarren v. Morgan, 58 App. D. C. 77, 24 F. (2d) 1003. This doctrine as stated in the Manly Case, and reiterated and followed in the others, is: "That attempts to enlarge the scope of an application once filed or of a patent once granted should be frowned upon, especially when the result would be the appropriation of an intervening invention."

In all three of these cases the Commissioner was reversed, but it should be noted that in each case the appellate court specifically found that the original application had failed to disclose the device or structure there in issue.

■ In the instant case it appears to us, as it did to the Patent Office tribunals, that the Schroeder and Wagner specifications and claims *do* disclose the features at issue, particularly under the application of the well-settled legal principle that in interference proceedings the "claims will be given the broadest interpretation which they reasonably will support." Lynch v. Headley, 52 App. D. C. 269; 285 F. 1003, 1004. What was said in Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935, seems apropos: "* * * The court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result."

There is much argument by appellants to the effect that appellees did not in their reissue application disclose the idea of simultaneously shifting the slotting and scoring parts, but this argument apparently overlooks certain language of the original patent,

No. 1,493,404, upon which the reissue application is based. In the specifications of that patent we find the following: "It will be noted from Figure 4 that the wheel 32 is not only splined to the shaft 30 but is held in place by set screws so that it may be adjusted longitudinally of shaft 30 for spacing the slots 69 as desired. The wheel 33 is constructed in a similar manner as indicated in Figure 5 so that it may be correspondingly adjusted. It will be noted that the plate or holding structure 65 containing the supporting mechanism for the floating ring, also moves or shifts along with the wheel 32, so that the floating ring is always in the same plane with the slotting knife segments 42 and 43. This will automatically insure that the creases 70 are in perfect alignment with the slots 69 and 71."

It would seem that the language is sufficient to disclose to "one skilled in the art" an adequate showing as to the necessary action in operation. In any event, the disclosure of Schroeder and Wagner upon this point is apparently quite as full as that of appellants. The specifications of both parties appear to assume, as we think they properly might assume, a knowledge upon the part of the persons operating the machine "that one of the male slotting blades should be engaged with the groove on the female slotting head or disk."

In view of this state of facts, we do not feel that appellees can successfully invoke the principle declared in Otis v. Ingoldsby & Bowling, 35 App. D. C. 102, wherein it was said: "It is not the object of sec. 4916, Rev. Stat., * * * relating to the reissue of a patent, to encourage or permit the insertion of claims in the reissue application which involve an impractical mode of operation, or which are obviously inserted for the sole purpose of appropriating claims of other inventors."

In Pierce v. Bell, 239 F. 549, 554, cited by appellants, the United States District Court said: "The introduction in a reissued patent of claims for invention which are described but which the patentee neither claimed nor intended to claim by the original patent is unauthorized and void. Ide v. Trorlicht, etc., Co., 115 F. 137, 53 C. C. A. 341; Clements v. Odorless Apparatus Co., 109 U. S. 641, 3 S. Ct. 525, 27 L. Ed. 1060."

These three cases were infringement cases, and the facts differed from those in the instant case.

The fourth assignment of error is: "That Schroeder and Wagner never claimed the subject matter of the interference, abandoned

it, if they ever were the inventors thereof, and that Stern and Huether and their company had secured intervening rights which could not be dominated by Schroeder and Wagner more than two years after such rights had been established."

In support of this appellants invoke the doctrine laid down in the noted case of Chapman v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491, and we are asked to hold the principle there declared as being applicable to a divisional application to be also applicable to a reissue application. In the Chapman v. Wintroath Case the court applied to a division application through which an interference was sought to be established the principle of Rev. St. § 4886, USCA title 35, § 31, which prohibits the grant of a patent where the subject-matter of the application "had been in public use or on sale in this country for more than two years" before the filing of the application.

In argument appellants say: "We can see no difference in principle between a divisional application and a reissue application particularly when the original patent and its application, on which the reissue is based never contained a claim directed to the subject matter of the interference."

■ We think this position is not tenable in an interference proceeding. Certainly the primary, perhaps the sole, question in an interference case is that of priority. There may be a number of subsidiary issues which the tribunals of the Patent Office and this court must pass upon in order to reach a conclusion upon the one question—priority—but these subsidiary issues must relate directly to the principal one, and such matters as "intervening rights" and "public use" appear to be so remote from this principal question as to have no proper bearing upon it. Even if the record in the instant case were in such a state as to present the questions of intervening rights and public use in a way that we could determine them, and even if that determination were to the effect that appellants had acquired such rights and that such public use was shown as that appellee would be barred from securing a patent, still such finding would not really aid in settling the issue of who was prior, the sole issue with which we are concerned in this proceeding.

■ The court decisions appear to be uniform in holding that questions of public use and intervening rights cannot properly be considered in interference cases. Earles & Lowe v. Gomber, 50 App. D. C. 389, 273 F. 353; Hayes v. Davison, 50 App. D. C. 361, 273 F. 325; Norling v. Hayes, 37 App. D. C. 169, 1911 C. D. 347; Frost v. Chase, 37 App. D. C. 179, 1911 C. D. 347.

The remaining subsidiary questions necessary to be determined are the respective (a) dates of conception and (b) reduction to practice.

Stern and Huether claim July 15, 1921, for conception and explanation to others; December 14, 1921, for first drawings; and about February 15, 1922, for completion and operation of the first machine.

Schroeder and Wagner claim the last week in June, 1920, for conception and first drawings; March 1, 1921, for completion and operation of their first machine; and about May 1, 1922, for first "written description of the invention."

Much testimony was taken by both parties, and a large number of exhibits, such as drawings, samples of the corrugated paper boards, photographs, a pattern of a part, time cards of laborers in the factories, contracts, letters, bills, books, etc., were filed. So we presume the case to have been as fully presented by each party as the facts would warrant.

The finding of the Board of Appeals upon this phase is as follows:

"Grounds 3 and 5 of the Stern and Huether appeal relate to questions of priority based on the testimony. Touching ground 3 of the appeal we are not satisfied that the evidence introduced in behalf of Stern and Heuther establishes a reduction to practice as early as February 4, 1922.

"The date urged for conception under ground 5 of the Stern and Huether appeal is December 6, 1922. Even if this date were accorded to Stern and Huether, and we think it has not been established, it is later than the date to which Schroeder and Wagner are entitled for actual reduction, September ———, 1922, based on the construction and sale of a machine embodying the subject matter of the interference count."

We find no reason in the mass of testimony to disagree with this finding of the Board. To enter upon a complete written review of the evidence would draw this opinion out to an undue length, and we forego so doing, feeling that it could serve no useful purpose. We have very thoroughly read and studied it in detail, having the benefit of the oral arguments as well as the careful analysis of it made in the respective briefs.

■ Upon the whole record in the case the tribunals of the Patent Office have concurred in affirming the right of Schroeder and Wagner to make the claim of the count and in according them priority. It is the established

rule that such decisions will be accepted by the appellate court as binding, unless palpable and manifest error has been committed. Oldroyd v. Morgan, 58 App. D. C. 78, 24 F. (2d) 1004, and cases therein cited.

We find no such error, and accordingly the decision of the Board of Appeals is affirmed.

Affirmed.